**SOLID GOLD REALTY, INC., Appellant,**

v.

**Jay D. MONDRY, Respondent.**

**No. C8-86-1264.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Kip M. Kaler, Fargo, N.D., for appellant.

Gregory D. Larson, Park Rapids, for respondent.

Heard, considered, and decided by LESLIE, P.J., and FOLEY, and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Appellant Solid Gold Realty, Inc. commenced this action against respondent Jay D. Mondry for commissions due on a sale of real property. Judgment was entered on May 9, 1986 in favor of Solid Gold but its claim for prejudgment interest was denied. Appeal is taken from that portion of the judgment denying prejudgment interest and from an order denying Solid Gold's motion for a new trial. We reverse and remand.

## FACTS

On February 3, 1980, Solid Gold entered into an exclusive listing agreement with Mondry to sell a parcel of real estate. The listing price was $95,000. The listing agreement, effective from February 3, 1980 to August 3, 1980, provided in pertinent part:

I [Jay Mondry] hereby agree to pay you [Solid Gold] a fee of 6% of the purchase price thereof, upon any sale or contract for the sale of said real estate made while this agreement remains in force * * *.

Sometime between February 3, 1980 and April 3, 1980, Mondry sold the property to John Cloutier under an arrangement involving a trade of properties rather than cash. Under the terms of this transaction, Mondry traded the subject property and Cloutier agreed to assume a $56,000 mortgage encumbering the property. Mondry additionally received property with an appraised value of $82,000 and a mortgage against it for $48,000.

On April 26, 1985, Solid Gold commenced this action against Mondry to collect its 6% commission under the terms of the listing agreement. Following trial, the court found that the value of the property Mondry received was $90,000, an amount derived from the $56,000 mortgage assumed by Cloutier, plus Mondry's receipt of property with equity of $34,000. The trial court concluded that Solid Gold was entitled to judgment against Mondry for $5,400, or 6% of the $90,000 value received from the sale of the property. Solid Gold's claim for prejudgment interest was denied without explanation. Solid Gold's motion for a new trial, based solely on its claim for prejudgment interest, was also denied without explanation.

In a letter dated July 16, 1986, Mondry rendered a certified bank draft for $6,035.75 to Solid Gold's attorney, which he stated "represents payment in full of [the judgment in favor of Solid Gold], including interest to date." Mondry's letter further stated that "[b]efore you negotiate the draft * * * I ask that you forward to me an appropriately executed satisfaction of judgment."

The draft was negotiated on July 29, 1986. On August 13, 1986, a partial satisfaction of judgment was executed, stating that the "judgment has been fully and finally paid," and additionally providing:

This Satisfaction in no way releases [Solid Gold's] right to appeal the Judgment entered in this case. [Solid Gold] specifically reserves those rights and intends to continue prosecution of its appeal of the Judgment, asserting [its] claim for prejudgment interest.

## ISSUES

1. Did Solid Gold waive its right to claim prejudgment interest?

2. Did the trial court err in denying Solid Gold prejudgment interest?

## ANALYSIS

Solid Gold contends that at a minimum it is entitled to prejudgment interest from the time this action was commenced on April 26, 1985 until entry of judgment on May 9, 1986. Solid Gold also asserts that it is entitled to prejudgment interest from the time its commission was earned on April 3, 1980 until the time the action was commenced on April 26, 1985. Mondry claims that Solid Gold has waived its right to seek prejudgment interest on the judgment because it cashed the $6,035.75 check and executed a release and satisfaction of judgment. We address the waiver argument first.

■ 1. Mondry premises this argument on *Summit Court, Inc. v. Northern States Power Co.,* 354 N.W.2d 13 (Minn.1984), *appeal after remand,* 382 N.W.2d 560 (Minn. Ct.App.1986).

*Summit Court,* 354 N.W.2d 13, involved prejudgment interest on two separate damages awards: a property damage award entered pursuant to a jury verdict in a prior separate action and a loss-of-use damage award. The property damage award had been previously affirmed by the supreme court in *In re Commodore Hotel Fire and Explosion Cases,* 324 N.W.2d 245 (Minn.1982). The defendants thereafter sent Summit Court's attorney two checks representing the property damage award, costs, and post-judgment interest. Included with the checks was a letter which stated:

We forward the checks with the understanding that they will not be released from your possession or presented for payment unless and until the [accompanying] release and satisfaction has been properly executed and returned to us.

*Summit Court,* 354 N.W.2d at 15. Summit Court's attorney cashed the checks and executed the release and satisfaction, which provided in part that the judgment was "acknowledged to be paid and *satisfied in full." Id.* (emphasis supplied).

Summit Court's subsequent motion for prejudgment interest on the property damage award was denied by the trial court. On appeal, the supreme court affirmed that denial based on the following reasoning:

Summit Court argues that, because its claim for prejudgment interest was completely separate from its property damages claim, the release and satisfaction cannot function to bar its claim for interest. We do not agree. *Prejudgment interest is bound up with the underlying damages award. It is part of the damages suffered by plaintiff where the defendant could have readily ascertained the damages and tendered them prior to trial.* In this case, the litigation had spanned several years by the time the judgment was satisfied. *If Summit Court thought that the damages amount was erroneous because it did not include prejudgment interest, the time to contest it was before accepting payment and executing the release and satisfaction.* * * * Satisfaction of a judgment is the last act of a proceeding. As the Colorado Supreme Court noted, "It extinguishes the judgment for all purposes and thereby promotes the interests of certainty and repose." *Dooley v. Cal-Cut Pipe & Supply, Inc.,* 197 Colo. 362, 364, 593 P.2d 360, 362 (1979). *We agree and hold that where a plaintiff accepts payment of a judgment in its favor and executes a release and satisfaction of that judgment, it may not later claim prejudgment interest on*  *the damages award underlying the judgment.*

*Id.* (emphasis supplied).

While the language in Mondry's letter stating that "[b]efore you negotiate the draft * * * I ask that you forward to me an appropriately executed satisfaction of judgment," is similar to that in *Summit Court,* this case is nevertheless distinguishable. Here, unlike the plaintiff in *Summit Court,* Solid Gold did not wait to contest the damage amount until after execution of the release and satisfaction, but instead challenged the denial of prejudgment interest in its motion for a new trial. Moreover, in contrast to the release and satisfaction in *Summit Court* which acknowledged that the judgment was "paid and satisfied *in full,"* the release here was entitled a *partial* satisfaction of judgment and expressly reserved Solid Gold's right to appeal the denial of prejudgment interest. We therefore conclude that Solid Gold has not waived its right to claim prejudgment interest.

■ 2. Awards of prejudgment interest are designed to serve two functions: (1) to compensate prevailing parties for the true cost of money damages incurred, and (2) to promote settlements when liability and damage amounts are fairly certain and deter attempts to benefit unfairly from delays inherent in litigation. *Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 752 (8th Cir.1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

■ Effective July 1, 1984, Minnesota adopted a compensatory policy toward prejudgment interest awards by amending Minn.Stat. § 549.09, subd. 1 to provide prejudgment interest in most cases. 1984 Minn.Laws ch. 399, § 1, ch. 472, § 2. *See also L.P. Medical Specialists, Limited v. St. Louis County,* 379 N.W.2d 104, 109 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 31, 1986).

The amended statute provides in pertinent part:

(b) Except as otherwise provided by contract or allowed by law, pre-verdict or pre-report interest on pecuniary damages shall be computed as provided in clause (c) *from the time of the commencement of the action,* except as provided herein.

\* \* \* \* \* \*

(c) The interest shall be computed as simple interest per annum.

Minn.Stat. § 549.09, subd. 1 (1984).

Solid Gold claims that under the statute it is clearly entitled to prejudgment interest from the date the action was commenced (April 26, 1985) until the date judgment was entered (May 9, 1986). We agree. The plain language of the statute provides for prejudgment interest "from the time of the commencement of the action." Minn. Stat. § 549.01, subd. 1 (1984).

■ Solid Gold additionally seeks prejudgment interest from the date its commission was earned (April 3, 1980) until the date the action was commenced. Prior to the 1984 amendment, prejudgment interest was allowed on an unliquidated damage claim

where the damages were *readily ascertainable by computation or reference to generally recognized standards such as market value* and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation).

*Summit Court,* 354 N.W.2d at 16 (emphasis supplied) (quoting *Potter v. Hartzell Propeller, Inc.,* 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971) (footnote omitted)); *see also Josten's, Inc. v. CNA Insurance Continental Casualty Co.,* 336 N.W.2d 544, 546 (Minn.1983); *Regents of University of Minnesota v. Medical Inc.,* 382 N.W.2d 201, 213 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. April 18, 1986), *cert. denied,* — U.S. —, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986).

Mondry claims that the damages were not readily ascertainable since the value of the property he received could have been based on alternate methods of calculation, thus reducing the commission owed. We disagree. In *ICC Leasing Corp. v. Midwestern Machinery Co.,* 257 N.W.2d 551 (Minn.1977), the supreme court stated:

In determining whether interest should be allowed the question was not whether the parties agreed on the amount of damages *but whether [the defendant] could have determined the amount of its potential liability from a generally recognized objective standard of measurement.* \* \* \* Mere difference of opinion as to the exact amount of damages was not sufficient to excuse [the defendant] from compensating [the plaintiff] for loss of the use of its money \* \* \*.

*Id.* at 556 (citation omitted) (emphasis supplied). *See Pearson-Berke Inc. v. McIntosh,* 350 N.W.2d 378, 379 (Minn.1984); *Tagtow v. Carlton Bloomington Dinner Theatre, Inc.,* 379 N.W.2d 557, 562–63 (Minn.Ct.App.1985).

Mondry does not contest the trial court's finding that he "sold" the subject property during the term of the exclusive listing agreement with Solid Gold. Even if the precise amount of Solid Gold's commission was unknown, Mondry could have determined the amount of his *potential* liability by "reference to generally recognized standards such as market value \* \* \*." *Moosbrugger v. McGraw-Edison Co.,* 284 Minn. 143, 160, 170 N.W.2d 72, 82 (1969). The fact that Mondry denied liability for Solid Gold's commission in no way affects his ability to calculate his *potential* liability. *See L.P. Medical Services,* 379 N.W.2d at 110.

While we agree that Solid Gold's commission was earned as of April 3, 1980 (the date on which Mondry admitted the transaction was completed), prejudgment interest is to be assessed against Mondry only from the date when Solid Gold first demanded payment. *See Pearson-Berke,* 350 N.W.2d at 379; *L.P. Medical Services,* 379 N.W.2d at 110. Since this fact was disputed at trial, the matter must be remanded to the trial court to determine when the demand for payment was first made.

Once this determination is made, Solid Gold is entitled to prejudgment interest at an annual rate of 6% (the legal rate of interest under Minn.Stat. § 334.01, subd. 1 (1980)) from the date demand for payment was made until July 1, 1984; from July 1, 1984 until the date of judgment, it is entitled to prejudgment interest at an annual rate of 8% (the rate of interest under Minn. Stat. § 549.09, subd. 1(c) (1984)). *See H.J. Kramer Plumbing & Heating, Inc. v. Scharmer,* 386 N.W.2d 742, 748 (Minn.Ct. App.1986).

## DECISION

The trial court erred in denying Solid Gold's claim for prejudgment interest. We remand to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded with instructions.