Robert J. CASEY, Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

No. C0-90-1408.

Court of Appeals of Minnesota.

Jan. 8, 1991.

Review Denied April 5, 1991.

Harry Christian, Christian, Spartz, Keogh & Christian, Le Center, for respondents.

Kenneth R. White, Farrish, Johnson & Maschka, Mankato, for appellant.

Considered and decided by SCHUMACHER, and PARKER and KLAPHAKE, JJ.

## OPINION

SCHUMACHER, Judge.

Respondents Robert and Irene Casey brought this declaratory judgment action to determine their entitlement to underinsured motorist benefits. On July 31, 1989, the trial court granted summary judgment on the question of coverage, leaving for trial a determination of Caseys' damages. The July 31 order included an award of attorney fees in an amount to be determined after trial. A jury determined that the Caseys had suffered total damages of $236,575.92. The trial court granted attorney fees of $5,904 to Caseys. The parties were unable to agree on how a prior settlement of $100,000 should be treated for the purpose of calculating prejudgment interest. The trial court deducted 43% of the settlement from the jury award before calculating prejudgment interest. Subsequently, the trial court granted Caseys their costs and disbursements, and State Farm has appealed.

## FACTS

Irene Casey was severely injured in an automobile accident on March 11, 1986. At the time, she was a passenger in a car driven by her daughter-in-law, Carol Casey. A Volkswagen van, driven by William Olsen, crossed the median and struck the Casey automobile head on.

Olsen was insured under a policy issued by American Family Insurance Company with liability limits of $100,000. Carol Casey was insured by State Farm and had liability limits of $50,000. Robert and Irene Casey were insured under two policies issued by State Farm with $100,000 in

underinsured motorist coverage on each policy.

Caseys commenced this action in July of 1987 to recover underinsured motorist benefits. In 1985, the legislature amended the underinsured motorist provisions of the No–Fault Act. *See* 1985 Minn. Laws ch. 168 § 12 and ch. 309 § 6. The Minnesota Supreme Court decided that the 1985 amendment applied only to policies which had been amended, renewed, or changed on or after October 1, 1985, the effective date of the statute. *AMCO Ins. Co. v. Lang,* 420 N.W.2d 895, 898 (Minn.1988). Subsequently, the Minnesota Supreme Court determined that the 1985 legislative amendment changed underinsured motorist coverage from "add-on" coverage to "difference-of-limits" coverage. *See Broten v. Western Nat'l Mut. Ins. Co.,* 428 N.W.2d 85, 88 (Minn.1988).

Based on the *Broten* and *AMCO* decisions, counsel for State Farm contacted the Caseys' attorney in November 1988 and advised them that one of the Caseys' policies had not been amended, renewed or changed on or after October 1, 1985 and provided $100,000 in underinsured motorist benefits. Recovery of the underinsured motorist benefits was subject to proof of liability and damages. Counsel for State Farm claimed a jury could find Carol Casey partially at fault for the accident, triggering her $50,000 in liability coverage.

Despite State Farm's attorney's November 1988 letter, a State Farm claims specialist, apparently relying solely on the *Broten* decision, wrote to the Caseys' attorney in March 1989 denying there was any underinsured motorist coverage available. State Farm also asserted there was no liability on the part of Carol Casey. This letter prompted Caseys' attorney to move for summary judgment on the coverage issue.

The trial court granted the Caseys' motion for summary judgment. In addition, the trial court awarded attorney fees in an amount to be determined at the trial on damages. Finally, the trial court ordered State Farm, within two weeks of the date of the order for summary judgment, to join Carol Casey as a party or be precluded from asserting her negligence at trial. State Farm elected not to join Carol Casey.

In June of 1989, the claim against Olsen was settled for his policy limits of $100,000. The underinsured motorist benefits claim proceeded to a jury trial. The jury awarded total damages of $236,575.92. Of this amount, $128,175.92 was for past damages, and $108,400 was for future damages. Of the past damages, $82,626.12 was subject to prejudgment interest.

After the verdict was returned, the Caseys and State Farm disagreed on collateral source offsets for purposes of calculating prejudgment interest. The difference between the parties was in determining how the $100,000 settlement should be treated for calculating prejudgment interest. State Farm argued the entire $100,-000 should be deducted before prejudgment interest was calculated. The Caseys argued that 43% of the settlement payment should be considered past damages subject to prejudgment interest and 57% future damages as determined by the jury's verdict. The trial court agreed with the Caseys and deducted $43,000 of the settlement.

In addition, pursuant to the summary judgment on the coverage issue, Caseys were awarded $5,904 in attorney fees related to establishing underinsured motorist coverage. The parties also disagreed on appropriate amount of costs and disbursements. The trial court, in a subsequent order, allowed $5,750.35 in costs and disbursements.

### ISSUES

1. Did the trial court err in awarding attorney fees?

2. Did the trial court abuse its discretion in determining the amount of attorney fees awarded?

3. Did the trial court err in calculating prejudgment interest?

4. Did the trial court abuse its discretion in its award of costs and disbursements?

## ANALYSIS

### 1. ATTORNEY FEES

■ Attorney fees are generally not recoverable unless there is a statutory or contractual provision providing for such fees. *Morrison v. Swenson*, 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966). The Declaratory Judgment Act authorizes the trial court to afford such supplemental relief as may be necessary or proper. Minn.Stat. § 555.08 (1988). Attorney fees are properly awarded in a declaratory judgment action as consequential damages for the insurer's breach of contract. *See Kline v. Hanover Ins. Co.*, 368 N.W.2d 381, 383 (Minn.App.1985); *Wondra v. American Family Ins. Group*, 432 N.W.2d 455, 460 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). This court has recently applied *Wondra* in reversing a trial court's refusal to award attorney fees where the insured sought first-party benefits. *See Garrick v. Northland Ins. Co.*, 460 N.W.2d 920, 926 (Minn.App.1990) (uninsured motorist benefits). The trial court had authority to award attorney fees.

### 2. AMOUNT OF ATTORNEY FEES

■ State Farm argues the trial court's award of $5,904 in attorney fees was excessive. In the trial court, State Farm did not argue that the attorney fees claimed were excessive; State Farm only argued that an award of attorney fees was not appropriate. This court's review is limited to those issues which the record establishes were raised in, and decided by, the trial court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Having failed to argue the fees awarded were excessive in the trial court, State Farm cannot raise the issue on appeal.

State Farm argues that significant amounts of the hours claimed were not spent on the coverage issue. This argument was never made to the trial court. Accordingly, the trial court made no decision on this issue, and there is nothing for this court to review. *See Security Bank of Pine Island v. Holst*, 298 Minn. 563, 564, 215 N.W.2d 61, 62 (1974).

### 3. PREJUDGMENT INTEREST

■ An award of prejudgment interest serves two functions. It compensates the prevailing party for the true cost of money damages incurred, and it promotes settlements when liability and damage amounts are fairly certain. *Solid Gold Realty, Inc. v. Mondry*, 399 N.W.2d 681, 683 (Minn.App. 1987). Such an award compensates the prevailing party for the loss of use of money. *Higgins v. J.C. Penney Casualty Ins. Co.*, 413 N.W.2d 189, 192 (Minn.App.1987).

Prior to 1984, an award of prejudgment interest was only allowed where the "damages were readily ascertainable by computation or reference to generally recognized standards such as market value." *See Summit Court, Inc. v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn.1984). In 1984, the legislature amended Minn.Stat. § 549.09, subd. 1 to provide prejudgment interest in most cases. 1984 Minn. Laws ch. 399, § 1; ch. 472, § 2; *Solid Gold*, 399 N.W.2d at 683.

■ Prior to calculating prejudgment interest, collateral source payments must be deducted. *See Jewett v. Deutsch*, 437 N.W.2d 717, 721–22 (Minn.App.1989). The parties agree that the prior $100,000 settlement constitutes a collateral source. The parties do not agree on how that collateral source should be treated. State Farm argues the entire settlement should be used to offset the past damages. This would result in the Caseys' receiving no prejudgment interest. Caseys contend the prior payment should be allocated between past and future damages in the same proportion as determined by the jury. The trial court agreed with the Caseys' argument.

■ There is no controlling case law on the issue. The trial court referred to the offer/counteroffer provisions of the prejudgment interest statute, which requires such allocation with respect to settlement offers. *See* Minn.Stat. § 549.09, subd. 1(b) (1988). In discussing the offer/counteroffer provisions of the statute, this court has noted it serves two purposes. First, the statute provides compensation for loss of use of money and, by implication, depriva-

tion of gain to a defendant resulting from the wrongful retention of the plaintiff's money. Second, the offer/counteroffer provisions are intended to promote settlement. *Johnson v. Kromhout,* 444 N.W.2d 569, 571 (Minn.App.1989). In determining how the settlement should be set off, this court should adopt an interpretation which gives effect to the dual purposes of the statute. *Id.*

The trial court's apportionment makes practical sense. In any recovery for personal injuries, some of the recovery will be for past damages, while other portions will be for future damages. State Farm's argument that the entire amount of Caseys' earlier recovery should be applied to past damages, and none to future damages, ignores this. A construction of section 549.-09 which would allocate the entire amount of any settlement to past damages, resulting in a forfeiture by the plaintiff of the right to recover prejudgment interest on any future recovery, would be a disincentive to settlement. Such a construction should be avoided. *See Johnson,* 444 N.W.2d at 571.

■■■■ In calculating prejudgment interest in cases arising under the No–Fault Act, in addition to the purposes of section 549.09, courts should be guided by Minn. Stat. § 65B.42(5) (1988), which states that one of the purposes of the No–Fault Act is to avoid double recoveries. In the present case, the Caseys had the use of the $100,-000 settlement for seven months before the jury's verdict was rendered. To avoid a double recovery, the interest Caseys earned on this money should be used as a collateral source offset. Thus, rather than calculating interest on $39,626.12 ($82,626.12 − $43,000), interest should have been calculated on $37,619.45 ($82,626.12 − $45,-006.67). This results in prejudgment interest of $13,561.40 rather than the $14,285.00 awarded. *See* Appendix.

### 4. COSTS AND DISBURSEMENTS

Minn.Stat. § 549.04 (1988) provides:

In every action in a district court, the prevailing party, including any public employee who prevails in an action for wrongfully denied or withheld employment benefits or rights, shall be allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person.

■■■■ Prior to 1983, the statute authorized recovery of those expenses that were *necessary.* In 1983, however, the statute was amended to authorize payment of *reasonable* disbursements. *See Larson v. Hills Heating & Refrigeration,* 400 N.W.2d 777, 783 (Minn.App.1987), *pet. for rev. denied* (Minn. April 17, 1987). A determination of what costs are reasonable is largely left to the discretion of the trial court. *Green–Glo Turf Farms v. State,* 347 N.W.2d 491, 495 (Minn.1984).

State Farm's objections to the disbursements claimed can be broken down into two areas. The first of these relates to the cost of obtaining medical records. These records were admitted at trial by agreement of the parties. State Farm contends the cost of obtaining the medical records is duplicative, since they were made exhibits during the depositions of Irene Casey's doctors. This contention is answered by Caseys' attorney's statement that "any records used during the depositions of doctors and later as trial exhibits were duplicated in the office of [Caseys'] attorney without an additional charge being taxed."

The second area of disbursements to which State Farm objects is the Caseys' expert witness fees. Minn.Stat. § 357.25 (1988) provides:

The judge of any court of record, before whom any witness is summoned or sworn and examined as an expert in any profession or calling, may allow such fees or compensation as may be just and reasonable.

■■■■ A determination of an expert witness' fee is left to the sound discretion of the trial court. *Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174, 177 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1984). In *Mohwinkel,* 22 property owners objected to a special property tax assessment. The objectors hired a

real estate appraiser and challenged the assessment. The trial court in *Mohwinkel* awarded each property owner an expert witness fee of $75.00, resulting in a total expert witness fee paid to the real estate appraiser of $1,650. This court upheld the award, stating:

District Court Code Rule 11 cannot be held to disallow compensation for all preparations outside the courtroom. Minn.Stat. § 357.25 provides the trial court with the discretionary authority to award an expert witness just and reasonable compensation. Its exercise of discretion under § 357.25 is expected to be based in part on "pretrial preparation required in order to give this testimony." [*Carpenter v. Mattison*, 300 Minn. 273, 281, 219 N.W.2d 625, 631 (1974)] (construing Minn.Stat. § 357.25). Rule 11 may disallow fees for outside preparations which are merely convenient, but it does not disallow those necessary for testimony. The Minnesota Supreme Court has held that

a discretionary award of expert witness fees will be disturbed only in cases where abuse of discretion is apparent.

*Id.* at 280, 219 N.W.2d at 631.
*Mohwinkel*, 357 N.W.2d at 177.

State Farm has not established an abuse of discretion by the trial court. State Farm's suggestion that Caseys' medical experts should have been limited to a fee of $300 each in a case involving the severe injuries and high damage award seen in this case is unrealistic. In addition, the argument that the fee awarded to the Caseys' economic expert was excessive is not supported by the record.

## DECISION

The trial court had authority to award attorney fees. State Farm cannot challenge the amount of attorney fees for the first time on appeal. In calculating the collateral source offset, the trial court properly allocated the settlement proceeds between past and future damages, but should also have taken Caseys' use of the settlement proceeds into account. The trial court did not abuse its discretion in its award of costs and disbursements.

Affirmed as modified.

## APPENDIX

The appropriate calculation of prejudgment interest is as follows:

A. Total verdict .................................. $236,575.92
   Past damages.................. $128,175.92
   Future damages .............. $108,400.00

B. Past damages subject to interest................. $ 82,626.12

C. Total collateral source payments ................. $ 45,549.80

D. Total verdict less total collateral source payments.. $191,026.12

E. Apportionment
   1. Percentage of total verdict attributable to past damages subject to interest
$$\frac{82,626.12}{191,026.12} = 43\%$$
   2. Percentage of total verdict attributable to future damages
$$\frac{108,400}{191,026.12} = 57\%$$

F. Total amount of settlement ..................... $100,000.00

G. Interest earned on settlement at 8% interest
   (see Minn.Stat. § 549.09) for 7 months ......... $ 4,666.67

H. Total offset for settlement...................... $ 45,006.67

(104,666.67 × 43%)

I. Past damages subject to interest................. $ 82,626.12
   less settlement .............................. $ 45,006.67
   TOTAL ...................................... $ 37,619.45

Prejudgment interest rate—8%
   1st year: 3–11–86 to 3–11–87    37,619.45 × 8% =   3,009.56
   2nd year: 3–11–87 to 3–11–88    40,629.01 × 8% =   3,250.32
   3rd year: 3–11–88 to 3–11–89    43,879.33 × 8% =   3,510.35
   4th year: 3–11–89 to 3–11–90    47,389.68 × 8% =   3,791.17
      TOTAL                     $ 13,561.40