Harry Peter BUYSSE, et
al., Respondents,

v.

BAUMANN–FURRIE & COMPANY,
Judgment Debtor,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, judgment garnishee, Petitioner, Appellant.

No. C6–90–1980.

Supreme Court of Minnesota.

Feb. 14, 1992.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for appellant.

Ruth Ann Webster, Robert M. Halvorsen, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondents.

Lynn Truesdell, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., and Samuel L. Hanson, Briggs & Morgan, Minneapolis, for judgment debtor.

SIMONETT, Justice.

We granted the petition of St. Paul Fire & Marine Insurance Company (St. Paul F. & M.) to review an unpublished decision of the court of appeals reversing summary judgment entered in St. Paul F. & M.'s favor after a remand from this court in *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865 (Minn.1989) (*Buysse I*). We now reverse in part, affirm in part, and remand.

This complex accounting malpractice lawsuit was abruptly ended in the fourth week of trial, when plaintiffs Buysse and defendant Baumann–Furrie entered into a stipulation for entry of judgment. The parties stipulated that Baumann–Furrie was negligent; and that its negligence resulted in damages to plaintiffs of $1 million; that plaintiffs could only seek collection of the damages from Baumann–Furrie's liability

insurance carrier, St. Paul Fire & Marine Insurance Company. The parties characterized the stipulation as a "Miller–Shugart" settlement. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982).

■ In an authentic *Miller–Shugart* settlement, the insurer has denied all coverage, and the abandoned insured, left on its own, agrees with the plaintiffs that judgment in a certain sum may be entered against it in return for the plaintiffs releasing the insured from any personal liability. In this case, however, St. Paul F. & M. had always acknowledged coverage and, indeed, was defending the insured at the trial then in progress. The fact that St. Paul F. & M. took the position that its policy limit for plaintiffs' claim was $500,000 under its "each error" coverage and not $1 million under its "multiple unrelated errors" coverage did not give the insured license to enter into a *Miller–Shugart* settlement with plaintiffs.

■ The danger of using a *Miller–Shugart* settlement when it does not fit is that it exposes the insured to a claim that it has breached the cooperation clause in its policy. If that happens, then the entire policy coverage is voided. *See Sargent v. Johnson,* 551 F.2d 221 (8th Cir.1977). In *Buysse I,* we ruled that by admitting liability and damages of $1 million, the insured had deprived the insurer of its right to defend those claims at trial and was a serious breach of the cooperation clause. We reversed plaintiffs' judgment for $1 million against St. Paul F. & M. as the garnishee.

The record in *Buysse I* was unclear, however, as to what the signatories to the stipulation had intended. In a *Miller–Shugart* settlement the insurer is not a party to the agreement, nor was St. Paul F. & M. named a party to this stipulation; nevertheless, defense counsel retained by St. Paul F. & M. had signed the stipulation even though the insured's personal attorney had already signed. We commented that "[t]he tenor of the stipulation of settlement and the circumstances under which it was negotiated and presented to the trial judge"

raised questions about St. Paul F. & M.'s role. Consequently, we went on to say:

> Because we cannot determine on the record before us whether the insurer joined in an agreement to recognize the continued vitality of the insurance coverage to the $500,000 limit, we remand to the trial court for determination of that fact issue.

448 N.W.2d at 875.

On remand, plaintiffs and the garnishee filed cross motions for summary judgment with supporting affidavits. The trial court found that the insurance company had never agreed to the stipulation and granted summary judgment in favor of St. Paul F. & M. The court of appeals reversed, ruling that there were disputed issues of fact precluding summary judgment. The court of appeals interpreted our remand not to require an explicit agreement to the stipulation on St. Paul F. & M.'s part. However, the inquiry was whether there was an understanding that "entry into the stipulation would not jeopardize coverage to the extent of the conceded limit of $500,000." *Id.*

All counsel were experienced trial attorneys, presumably familiar with *Miller–Shugart.* All knew that St. Paul F. & M. had retained attorney May to defend Baumann–Furrie, and that attorney May was St. Paul F. & M.'s agent to make any offers involving St. Paul F. & M.'s policy limits. Mr. May had previously conceded $500,000 coverage and, indeed, had tendered that sum in settlement on behalf of St. Paul F. & M. It now appears this authority to pay $500,000 at all times remained "on the table." The subject of the stipulated judgment apparently arose about the time that Mr. Baumann, president of Baumann–Furrie, was complaining of illness and there was some concern about the trial being able to continue. Even though Mr. Baumann and his personally retained counsel had signed the stipulation for judgment, plaintiffs' counsel insisted that Mr. May or his co-counsel Keenan sign too, stating that he wanted to know if St. Paul F. & M. objected. Plaintiffs' counsel did know, however, that St. Paul F. & M. op-

posed such a settlement. Indeed, only the day before St. Paul F. & M. had rejected a somewhat similar proposal. Upon learning of the stipulated settlement from Mr. May, St. Paul F. & M. vehemently objected.

All counsel understood that Mr. May had St. Paul F. & M.'s authority to settle for up to $500,000, and, it seems clear to us, by having his co-counsel sign the stipulation, Mr. May was confirming at least this commitment which was not inconsistent with his actual authority. Forfeiture of coverage, especially conceded coverage, is a harsh sanction, and before it will be imposed something more in the way of evidence is required than was produced here. We have already held that the disputed claim for the additional $500,000 coverage had been voided; this, we think, is a sufficient sanction for the violation of the insurer's rights and responds, fairly and proportionately, to the prejudice sustained by St. Paul. We are left, then, with a confessed judgment for which there is $500,000 of coverage.

■ As we held in *Buysse I*, the disputed second $500,000 of coverage for alleged multiple unrelated errors has been voided by the stipulated settlement. We now hold that the initial $500,000 for "each error" coverage remains available for the stipulated settlement, which settlement, we conclude, should remain binding between plaintiffs and defendant. Consequently, the only possible issue remaining on remand is whether the stipulated damages up to the sum of $500,000 are reasonable. In view of the fact that St. Paul was willing to pay $500,000 during trial, we hold as a matter of law that St. Paul, as garnishee, is liable to plaintiffs in the amount of $500,000.

Affirmed as modified and remanded for entry of judgment against garnishee St. Paul as indicated.

COYNE, Justice (dissenting).

I dissent. It is utterly incomprehensible to me that this court could issue the majority opinion in this case, an opinion in which the court finds as a matter of law a fact diametrically opposed to the fact found by the trial court and goes on to totally ignore

the law of the case established in *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865 (Minn.1989), with the result that the court has violated its own ruling.

On September 22, 1989 this court issued a unanimous opinion in which it distinguished the settlement between these parties from the kind of settlement which the court held enforceable in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), and held that the settlement agreement was material and, with respect to the disputed portion of the policy limits, prejudicial so that policy coverage in excess of $500,000 was clearly void. Because we could not determine on the record before us whether there was some understanding that the attempt to settle the matter by a *Miller–Shugart* type of agreement would not jeopardize the insurance coverage of $500,000 payable for all claims resulting from a single error or series of related errors, we remanded to the trial court for determination of that single fact issue. That single fact was "whether the insurer joined in an agreement to recognize the continued vitality of the insurance coverage to the $500,000 limit." *Buysse I*, 448 N.W.2d at 875. If there was no agreement to continue that amount of coverage in force despite the attempted *Miller–Shugart* settlement, the policy was void and the insurer/garnishee was entitled to be discharged. If the court found that there was such an agreement, then the policy remained in force to the limit of $500,000. The consequence of a finding that coverage exists does not, however, automatically mean the insurer is liable; it simply means that the claimant is to be afforded the opportunity to prove liability to the limit of $500,000.

On remand, the trial judge, who had presided over four weeks of trial prior to the stipulation for settlement and who certainly had an opportunity to observe the interaction among the several lawyers engaged in the matter, granted the insurer's motion for summary judgment, saying that he "reluctantly" found no such agreement; and, therefore, he directed entry of judgment in favor of the insurer/garnishee, St. Paul Fire & Marine Insurance Company. I have

reviewed the affidavits interposed in connection with the motion, and in my view the affidavits and the inferences reasonably to be drawn from them amply support the trial court's determination.

Nevertheless, this court now usurps the trial court's role as finder of fact. Declaring that "by having his co-counsel sign the stipulation, Mr. May was confirming at least this commitment [referring, apparently, to authority to settle for up to $500,000] which was not inconsistent with his actual authority," the majority finds, as a matter of law, not only that the $500,000 "each error" coverage is in force, but also that the stipulated settlement remains binding on the parties, that the stipulated damages are reasonable, and that the insurer is liable to the plaintiffs in the amount of $500,000!

Of course, that set of findings far exceeds the scope of the inquiry on remand. It also directly contravenes the law of the case. In *Buysse I* we stated that if it should be determined that the $500,000 limit should remain in force despite the stipulation of settlement, then the only remedy would be to set aside the stipulated judgment on such terms with respect to costs, fees and disbursements as may be appropriate and reopen the main action for trial on all issues. It is apparent that the parties understood our earlier decision, for the only request of the plaintiffs in the underlying action—the judgment creditors in this garnishment proceeding—is that prescribed by the earlier decision: a vacation of the judgment in favor of the plaintiffs and reopening the main action for trial of liability and damages to the extent of the available coverage of $500,000. *Id.* at 875.

There has never been any determination with respect to liability or damages, and this court is hardly qualified to take on that task in the context of this garnishment proceeding. Particularly is this so in light of our comment in *Buysse I* that plaintiffs' claim depended on an extension of existing law. *Id.* at 874.

Finally, to treat the settlement as if it survives our earlier decision is to do exactly what we said an insured could *not* do—

that is, to "wrest[ ] control of the lawsuit from the insurer, stripping it of its contractual right to defend and settle the action, and thus violating the insured's covenants." *Id.* at 873. It is one thing to relieve the insured of the consequences of a breach of contract by setting aside the settlement. It is quite something else to reward the insured for breaching the contract by declaring that by agreement entered into over the insurer's protest and without any need for proof of either the insured's liability or the claimants' damages, the insurer is liable to the claimants to the full extent of its policy limits. Thus, in a single stroke, has the court discarded the fundamental and time-honored principle of law of the case and sanctioned the destruction of the insurer's right to defend the insured.

For the foregoing reasons I would affirm the trial court.