Harry Peter BUYSSE, et al., judgment
creditors, Respondents,

v.

BAUMANN–FURRIE & COMPANY,
judgment debtor, Respondent,

and

St. Paul Fire & Marine Insurance
Company, judgment garnishee,
Appellant.

Nos. C7–92–1667, C1–92–1695.

Court of Appeals of Minnesota.

April 6, 1993.

Review Denied June 28, 1993.

Robert M. Halvorson, Gislason, Dosland,
Hunter & Malecki, New Ulm, for Harry
Peter Buysse, et al., judgment creditors,
respondents.

Lynn Truesdell, Bassford, Heckt, Lock-
hart, Truesdell & Briggs, P.A., Samuel
Hanson, Briggs and Morgan, Minneapolis,
for respondent.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for appellant.

Jerold O. Nelson, Minneapolis, for intervenor Kellogg Com'n Co.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

This litigation arises out of an accounting malpractice lawsuit and has been the subject of two decisions of the Minnesota Supreme Court, *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865 (Minn.1989) (*Buysse I*) and *Buysse v. Baumann–Furrie & Co.*, 481 N.W.2d 27 (Minn.1992) (*Buysse II*). The focus of this appeal is whether the trial court erred by awarding respondents/judgment creditors prejudgment interest on the $500,000 judgment awarded by the supreme court against appellant/garnishee St. Paul Fire & Marine Insurance Company. We affirm.

## FACTS

Respondent/defendant Baumann–Furrie & Company performed accounting services for Ghent Grain & Feed, Inc. After Ghent became insolvent, 82 of Ghent's creditors and Ghent's trustee in bankruptcy (respondents) sued Baumann–Furrie & Company, alleging that Baumann–Furrie had negligently prepared Ghent's financial statements and negligently failed to notify respondents after discovery of the errors that such financial statements were inaccurate. Appellant St. Paul Fire & Marine Insurance Company is the errors and omissions insurer for Baumann–Furrie.

St. Paul Fire & Marine acknowledged that the claims were within the coverage afforded by its policy and engaged counsel to defend the actions against Baumann–

Furrie. St. Paul Fire & Marine took the position that its limit of liability was $500,-000, the "each error limit" set out in the policy. Baumann–Furrie, on the other hand, took the position that its liability, if any, resulted from multiple unrelated errors, thus invoking the $1 million total policy limit of coverage.

The trial on the main action between respondents and Baumann–Furrie began on January 5, 1987. Just prior to opening statements, defense counsel retained by St. Paul Fire & Marine to defend Baumann–Furrie (attorney May) put on the record an "offer in full settlement of all the claims of the full limits under the policy." The offer did not include interest.

On January 28, 1987, while the trial was proceeding, Baumann–Furrie and respondents entered into a stipulation of settlement which the parties characterize as a *Miller–Shugart* settlement.[1] The stipulation provided that Baumann–Furrie was negligent and its negligence was the proximate cause of respondents' damages in excess of $1 million. In addition to Baumann–Furrie's personal counsel, counsel retained by St. Paul Fire & Marine to defend Baumann–Furrie also signed the stipulation, even though St. Paul Fire & Marine was not a named party to the stipulation. The stipulation recited St. Paul Fire & Marine's concession of coverage up to $500,000, notification of the parties' intention to enter into the stipulation, and St. Paul Fire & Marine's declination to join in the stipulation. The stipulation limited collection and satisfaction of respondents' judgment to St. Paul Fire & Marine's obligation pursuant to its policy or policies insuring Baumann–Furrie. A $1 million judgment was entered against Baumann–Furrie in accordance with the stipulation.

Respondents/judgment creditors subsequently served a garnishment summons and a supplemental summons and com-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. In a *Miller–Shugart* settlement, the insured, having been denied *any* coverage for a claim by the insurer, agrees claimant may enter judg-

ment against him for a sum collectible only from the insurance policy. To be binding on the insurer if policy coverage is found to exist, the settlement amount must be reasonable. *See Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982).

plaint on appellant/garnishee St. Paul Fire & Marine on April 27, 1987. In its answer, St. Paul Fire & Marine denied any indebtedness to respondents. The trial court awarded summary judgment against St. Paul Fire & Marine in the amount of $500,000, plus costs and disbursements, pursuant to the terms of the stipulation between Baumann–Furrie and respondents.

On appeal, the supreme court reversed. The court held that Baumann–Furrie's entry into the *Miller–Shugart* settlement was a breach of the cooperation clause of the insurance contract sufficient to void coverage. *Buysse I*, 448 N.W.2d at 874. However, based upon the tenor of the stipulation and the circumstances under which it was negotiated, the court remanded for a factual determination of whether there was an understanding that "entry into the stipulation would not jeopardize coverage to the extent of the conceded limit of $500,000." *See id.* at 875. The court noted that if there was no such understanding, the policy was void. *Id.* The court suggested that if St. Paul Fire & Marine agreed that the conceded limits of $500,000 remain in force despite the stipulation, it might be appropriate to set aside the stipulated judgment and reopen the main action, that is, the malpractice action, for a determination of liability at trial. *See id.*[2]

On remand, the trial court found that St. Paul Fire & Marine had never agreed to the stipulation for settlement and granted summary judgment in its favor. The supreme court reversed on appeal, concluding that because attorney May had tendered $500,000 during the trial and his authority to do so at all times "remained on the table," St. Paul Fire & Marine was liable to respondents in that amount, $500,000, as a matter of law. *Buysse II*, 481 N.W.2d at 29–30. The case was remanded for entry of judgment against St. Paul Fire & Marine "as indicated." *Id.* at 30.

Following *Buysse II*, respondents sought judgment against St. Paul Fire & Marine in the amount of $500,000, together with pre-

judgment interest from the date of the commencement of the garnishment proceeding (approximately $183,000). On April 6, 1992, a check was tendered in the amount of $500,000, representing the principal portion of the amount due to respondents, leaving the issue of prejudgment interest in dispute.

The trial court granted respondents' request for prejudgment interest and ordered judgment to be entered against appellant St. Paul Fire & Marine in the amount of $500,000, plus $183,862.95, representing accrued prejudgment interest from April 27, 1987, the date of commencement of the garnishment proceeding. The trial court concluded that interest stopped accruing upon receipt of the $500,000 check on April 6, 1992.

On appeal, St. Paul Fire & Marine challenges the award of prejudgment interest. Appellant's petition for accelerated review by the supreme court was denied.

## ISSUE

Are respondents/judgment creditors entitled to prejudgment interest from the time of the commencement of the garnishment action against appellant/judgment garnishee?

## ANALYSIS

The supreme court did not consider in any respect the issue of prejudgment interest in either *Buysse I* or *Buysse II*. Appellant's argument that it owes no prejudgment interest is premised on its contention that the stipulation entered into on January 28, 1987 (prior to commencement of the garnishment action), constitutes an "offer" within the meaning of the prejudgment interest statute, Minn.Stat. § 549.09, subd. 1(b) (Supp.1991).

■ The appellate court owes no deference to the trial court's interpretation of a statute. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The prejudgment in-

---

**2.** Appellant concedes that it has always maintained the position that there was no such agreement.

terest statute, Minn.Stat. § 549.09, subd. 1(b) provides in part:

Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided in clause (c) from the time of commencement of the action or a demand for arbitration, or the time of written notice of claim, whichever occurs first, except as provided herein. The action must be commenced within two years of a written notice of claim for interest to begin to accrue from the time of the notice of claim.

The statute goes on to state:

If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counteroffer within 30 days. After that time, interest on the judgment or award shall be calculated by the judge or arbitrator in the following manner. The prevailing party shall receive interest on any judgment or award from the time of commencement of the action * * * until the time of verdict, award, or report only if the amount of its offer is closer to the judgment or award than the amount of the opposing party's offer. If the amount of the losing party's offer was closer to the judgment or award than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment or award, whichever is less, and only from the time of commencement of the action * * *.

Id.

[A]n award of prejudgment interest is not intertwined with the merits of a case. Rather, like attorney's fees, prejudgment interest is collateral and supplemental to decision on the merits, playing no role in determining ultimate liability. An award of prejudgment interest to the "prevailing party" [as stated within the prejudgment interest statute] is merely a tangential reference to the merits of a case and does nothing to destroy the compensatory nature of the award.

Fette v. Peterson, 406 N.W.2d 594, 597 (Minn.App.1987), pet. for rev. denied (Minn. June 30, 1987) (footnote omitted) (citing Solid Gold Realty, Inc. v. Mondry, 399 N.W.2d 681 (Minn.App.1987)).

■ "A prevailing party can receive preverdict interest only if the amount of its offer is closer to the verdict than the amount of the opposing party's offer." Imlay v. City of Lake Crystal, 453 N.W.2d 326, 335 (Minn.1990). There need not be a counteroffer to trigger the offer-counteroffer provision of the prejudgment interest statute. Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826, 841 n. 17 (Minn. 1988), cert. denied, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

Prejudgment interest essentially serves a dual purpose: (1) to compensate the plaintiff for the loss of use of his money, and, by implication, to deprive the defendant of any gain resulting from the use of money rightfully belonging to the plaintiff; and (2) to promote settlement.

Burniece v. Illinois Farmers Ins. Co., 398 N.W.2d 542, 544 (Minn.1987); see also Stinson v. Clark Equip. Co., 473 N.W.2d 333, 335 (Minn.App.1991), pet. for rev. denied (Minn. Sept. 13, 1991).

■ The terms of the prejudgment interest statute clearly apply to a garnishment action. See Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277 (Minn.1990). In Alton M. Johnson, the court held that prejudgment interest on a stipulated judgment entered pursuant to a Miller–Shugart settlement accrues against the garnishee from the time of the commencement of the garnishment action. The court stated:

We do not think interest on the stipulated [Miller–Shugart] judgment qualifies as postjudgment interest; unlike a regular garnishment proceeding, the judgment in the main action here is only inchoate because its reasonableness remains to be proven by the judgment creditor. The stipulated judgment sought to be enforced under the garnishee's indemnity policy * * * represent[s] pecuniary damages, and, conse-

*quently, it seems to us this is the kind of action where prejudgment interest applies from the time of the commencement of the garnishment action to entry of the garnishment judgment.* We do not understand [the insurer/garnishee] to claim that its policy precludes coverage for prejudgment interest allowed by law.

*Alton M. Johnson,* 463 N.W.2d at 280 (citation omitted). As the trial court noted, St. Paul Fire & Marine makes no claim that the terms and conditions of its policy with Baumann–Furrie preclude or limit coverage for prejudgment interest allowed by law.

Appellant attempts to distinguish *Alton M. Johnson* by pointing out that there had been no offer of settlement in that case as there had been here. However, because we hold that there had been no offer of settlement here either, this is not a distinguishing point.[3]

■ Appellant's argument that it owes no prejudgment interest is premised on its contention that the stipulation entered into on January 28, 1987 constitutes an "offer" within the meaning of the prejudgment interest statute. First, appellant argues that because preverdict interest runs from the commencement of the action until the time the settlement offer is made, and because the alleged "offer" of $500,000 made by appellant on January 28, 1987, predates the commencement of the garnishment proceeding (which was April 27, 1987), respondents are not entitled to any preverdict interest.

Appellant's argument is also based upon the amount of the ultimate judgment of $500,000. If the stipulation constitutes an "offer" of $500,000, as argued by appellant, then the amount of appellant's "offer" would be closer to the amount of the award ($500,000) than any offer of settlement made by respondents,[4] "the prevailing par-

ty." In such a case, the statute requires prejudgment interest only on the offer or the award, whichever is less. *See* Minn. Stat. § 549.09, subd. 1(b). Here, if the January 28, 1987 stipulation constituted an "offer," the "offer" was equal to the amount of the ultimate award. Therefore, appellant argues, it owes no prejudgment interest.

To support its position, appellant relies heavily on the supreme court's opinions in *Buysse I* and *Buysse II,* which ultimately resulted in a judgment in the amount of $500,000 in favor of respondents and against St. Paul Fire & Marine. *See Buysse II,* 481 N.W.2d at 30.

In *Buysse I,* the court determined that if St. Paul Fire & Marine had agreed that the conceded limits of $500,000 should remain in force despite the stipulation, the policy would remain in effect up to $500,000, despite the breach of the insurance contract. *Buysse I,* 448 N.W.2d at 874–75. Subsequently, in *Buysse II,* the court determined that such an agreement did exist, concluding the insurer had agreed "to recognize the continued vitality" of coverage up to $500,000. *Buysse II,* 481 N.W.2d at 29 (quoting *Buysse I,* 448 N.W.2d at 875). Once the court determined that the $500,000 coverage remained "available" for the stipulated settlement between respondents and Baumann–Furrie, it went on to decide whether the stipulated damages of $500,000 were reasonable. *See Buysse II,* 481 N.W.2d at 30. Concluding the amount was reasonable, the court ordered judgment in the amount of $500,000 in favor of respondents and against St. Paul Fire & Marine. *Id.*

Based upon language used in *Buysse II,* appellant argues that the supreme court concluded that appellant made an "offer" of settlement in the amount of $500,000

**3.** Appellant also states that the trial court cited *Alton M. Johnson* only in connection with its observation that the language of the policy itself did not preclude an award for prejudgment interest. However, the prejudgment interest statute begins with the statement, "Except as otherwise provided by contract * * *." Minn.Stat. § 549.09, subd. 1(b). There is no question in our minds that the trial court, in its thorough

findings of fact and conclusions of law, was addressing this point of the statute when it mentioned the fact that the language of the policy did not preclude awarding prejudgment interest.

**4.** Respondents concede they made no "offer" of settlement in the garnishment action.

long ago. *See Buysse II,* 481 N.W.2d at 29. We are not persuaded. Agreeing to recognize the "continued vitality" of the insurance coverage does not rise to the level of making a specific offer to settle the case. Although the court determined the policy was void (based upon Baumann–Furrie's breach of the insurance contract), it enforced the terms of the so-called *Miller–Shugart* agreement because it concluded coverage was nevertheless available. The court's finding of coverage was not based upon an "offer" made by St. Paul Fire & Marine, but rather, was based upon its finding that St. Paul Fire & Marine had agreed that coverage would remain available despite the stipulation which ultimately resulted in a breach of the insurance contract by the insured, Baumann–Furrie. Based upon this finding, the court imposed a $500,000 award in favor of plaintiffs.

Appellant's argument values form over substance. The "offer" appellant points to was really a court-imposed judgment. A court-imposed judgment does not qualify as an "offer" within the meaning of the prejudgment interest statute.

Appellant's argument also confuses the underlying action to determine the liability of Baumann–Furrie with the garnishment action. Any so-called "offer" made by appellant was made in the underlying liability action. The liability action ended when the stipulation was entered into by plaintiffs and Baumann–Furrie. Plaintiffs then commenced this garnishment action on April 27, 1987, after plaintiffs and Baumann–Furrie had stipulated to Baumann–Furrie's negligence.

Garnishment is not an independent action but is a proceeding ancillary to the main action, initiated by service of a garnishee summons and continued by supplemental complaint. The purpose of garnishment is to reach property of the defendant in the hands of the garnishee in order to apply it in satisfaction of the judgment. The proceeding is one in the nature of an involuntary action by the defendant against the garnishee for the benefit of the plaintiff.

*Buysse I,* 448 N.W.2d at 870 (citations omitted). In its answer to the garnishment action, St. Paul Fire & Marine denied any indebtedness to plaintiffs. There was never an offer by appellant to settle the garnishment action. *The record reflects that St. Paul Fire & Marine has firmly and consistently denied any indebtedness to the judgment creditors.* In fact, the issue of St. Paul Fire & Marine's indebtedness to plaintiffs in this garnishment action has been the subject of this lengthy and expensive litigation.

As respondents point out, appellant's argument that the delay here is the product of respondents' rejection of an offer that was "always on the table," is without merit. In *Buysse I,* St. Paul Fire & Marine argued that Baumann–Furrie breached the insurance contract and therefore any coverage under the policy is now void. In *Buysse II,* St. Paul Fire & Marine denied agreeing to recognize the continued vitality of the insurance coverage up to the conceded limit of $500,000. Despite the supreme court's holding in *Buysse II,* appellant concedes that it has always maintained the position that it never agreed to recognize the continued vitality of the $500,000 in insurance coverage. Appellant cannot now "coattail" *Buysse II* as though it had made an "offer" of settlement as contemplated by the prejudgment interest statute.

The trial court made impressively thorough and detailed findings which are supported by the record, and we find no error in the trial court's well reasoned conclusions of law. We affirm the trial court's award of prejudgment interest in favor of respondents/judgment creditors.

## DECISION

The award of prejudgment interest in favor of respondents is affirmed.

Affirmed.