J.W. on behalf of B.R.W., minor child, Appellant,

v.

**287 INTERMEDIATE DISTRICT,** Respondent,

Independent School District 271, a/k/a Bloomington Public Schools, a/k/a Transportation Center for Independent School District 271, Respondent,

**Adam Services, Inc., Respondent.**

No. A08–0612.

Court of Appeals of Minnesota.

March 3, 2009.

Philip G. Villaume, Jeffrey D. Schiek, Villaume & Schiek, P.A., Bloomington, MN, for appellant.

Scott Ballou, Brownson & Ballou, PLLP, Minneapolis, MN, for respondent 287 Intermediate District.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for respondent Independent School District # 271.

Judith Mlinar Seeberger, Reding & Pilney, PLLP, Lake Elmo, MN, for respondent Adam Services, Inc.

Considered and decided by HUDSON, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant J.W.'s son, B.R.W., was sexually assaulted by another child while riding a school bus. Appellant sued two school districts and Adam Services, Inc. (Adam), the bus company that provided transportation during the school year. On summary judgment, the district court dismissed all of appellant's claims against respondents except for the negligence claim against respondent Adam. The district court also denied appellant's motion to amend her complaint to add a punitive-damages claim against Adam and Adam's motion for sum-

mary judgment. We affirm in part, reverse in part, and remand.

## FACTS

In January 2005, C.R. moved into a group transition home located in the geographical area served by respondent Independent School District 271 (Bloomington). Because C.R. was diagnosed with an emotional-behavioral disorder (EBD), school officials determined that his educational needs were best met by placement in the Hosterman Education Center (Hosterman), a facility run by respondent 287 Intermediate District that serves students with EBD. Transporting students to and from Hosterman is the responsibility of the student's school district, in this case Bloomington. During the school year, Bloomington arranged to provide transportation to and from Hosterman in a bus owned and operated by Adam. During the summer session, Bloomington used its own buses, operated by its own employees, to provide transportation to and from Hosterman.

C.R. began riding a bus operated by Adam on April 6, 2005. He continued to ride that bus until the end of the school year, sometime in the middle of June 2005. After the school year, C.R. began riding a bus operated by Bloomington. He rode this bus from June 20, 2005 through July 18, 2005. Also present on the two buses was B.R.W., another child who was attending Hosterman. While the details are somewhat in dispute, C.R. sexually assaulted B.R.W. on the bus ride to and from Hosterman on at least one occasion.[1]

Bus-transportation forms are created for each child with a disability who rides a

---

1. As part of a plea agreement, C.R. pleaded guilty to one count of second-degree criminal sexual conduct against B.R.W. Appellant con-

tends that B.R.W. was assaulted on multiple occasions on the bus, both during the school year and during the summer session.

school bus. These forms contain, among other things, information about the child's disability and seating instructions. In this case, there were two bus-transportation forms created for C.R. Both forms were created with the input of officials from Bloomington and Hosterman. The first bus-transportation form, created for transport during the school year, indicated that C.R. had an "EBD" disability. It contained the seating instruction that C.R. "Sit in Front Seat Alone." The second bus-transportation form, created for transport during the summer session, also indicated that C.R. had an "EBD" disability. It included the seating instruction that C.R. should "SIT BEHIND DRIVER, ALONE IN THE SEAT!" A handwritten star was placed next to this instruction. What the bus-transportation forms did not contain, however, was information that C.R. had a history of sexually inappropriate behavior. This was information that school officials had access to but intentionally did not disclose.

At the district court, appellant argued that this decision not to disclose was negligent and not protected by statutory immunity. Further, appellant contended that, on at least one occasion, the instruction that C.R. should sit alone in the front seat was disregarded by the bus drivers and aides employed by both Bloomington and Adam. Appellant also argued that the bus drivers and aides were negligent in not following these instructions and that their actions are not protected by official immunity. The district court, in an extremely thorough and well-crafted opinion, granted summary judgment in favor of Bloomington and Hosterman, but not as to Adam. The district court also denied appellant's motion to amend her complaint to add a punitive-damages claim against Adam. This appeal follows.

## ISSUES

I. Did the district court err when it granted Bloomington's motion for summary judgment based upon statutory and official immunity?

II. Did the district court err when it granted Hosterman's motion for summary judgment based upon statutory and official immunity?

III. Did the district court err when it denied appellant's motion to add a claim for punitive damages to her complaint?

IV. Did the district court err when it denied Adam's motion for summary judgment on appellant's negligence claim against Adam?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

The applicability of governmental immunity is a question of law subject to de novo review. *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn.2004) (official immunity); *Johnson v. State*, 553 N.W.2d 40, 43–44 n. 1, 45 (Minn.1996) (official and

statutory immunity; also referred to as "discretionary immunity").

■■■ The Minnesota Tort Claims Act holds municipalities, including school districts, liable for their torts. Minn.Stat. § 466.02 (2008). But under the doctrine of statutory immunity, school districts are immune from liability for claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (2008). Because statutory immunity is an exception to the general rule of governmental liability, courts must narrowly construe it. *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn.2000). A school district asserting a statutory immunity defense has the burden of demonstrating facts showing that it is entitled to the defense. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997).

The Minnesota Supreme Court has stated that "[i]f a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions." *Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996).

■■■ In defining what a discretionary act is, appellate courts distinguish between planning and operational decisions. *Conlin*, 605 N.W.2d at 400. While planning decisions involve questions of public policy and are protected as discretionary actions, operational decisions relate to the day-to-day government operation and are not protected. *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988). School districts "must demonstrate policymaking at some level to claim discretionary immunity successfully." *Doe v. Park Ctr. High Sch.*,

592 N.W.2d 131, 135 (Minn.App.1999). This court's primary concern when determining if a decision is protected by statutory immunity is "to consider whether a government entity has demonstrated the balancing and evaluation of policymaking factors and effects of a given plan." *Id.* at 136. The first step in analyzing a claim of statutory immunity is to identify what governmental conduct is being challenged. *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994).

■■■ In contrast to statutory immunity, which protects governmental entities, official immunity protects public officials. The doctrine of official immunity establishes that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn.1988) (quotation omitted).

■■■ The discretion involved in official immunity differs from the policymaking type of discretion involved in statutory immunity. *Id.* at 678. "Official immunity involves the kind of discretion which is exercised on an operational rather than a policymaking level, and it requires something more than the performance of 'ministerial' duties." *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992). Ministerial duties have been defined as "absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937) (quotation omitted); *see, e.g., Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (dismantling an abandoned house a ministerial duty). Public officials may raise official immunity as a defense against claims resulting from

the conduct of third persons. *See Olson v. Ramsey County,* 509 N.W.2d 368, 372 (Minn.1993) (holding that a social worker protected by official immunity when determining level of services to provide to protect her client from child abuse); *Pletan,* 494 N.W.2d at 41 (holding that a police officer protected by official immunity for decision to engage in and to continue high-speed car chase).

1. *The district court erred in part when it granted Bloomington's motion for summary judgment based upon statutory and official immunity.*

a. *Statutory Immunity.*

■ Bloomington's decision not to disclose C.R.'s prior history of sexually inappropriate behavior is protected by statutory immunity. The decision of whether to disclose C.R.'s history of sexually inappropriate behavior involved the balancing of safety issues, confidentiality issues, and the possible legal consequences of both disclosure and nondisclosure. As a social worker from Bloomington explained:

> I, along with other members of the [team responsible for determining what to disclose on C.R.'s bus transportation form,] based upon the information available to me and based upon my education, training, and experience, decided that the accommodation for busing would not include information that [C.R.] had a history of acting out sexually, nor an instruction that he should not be allowed to be with children under age 12 without adult supervision. This decision was based upon a number of factors which were carefully weighed, such as providing [C.R.] with an appropriate education in the least restrictive environment, information that [C.R.] did not have a criminal history relating to his history of acting out sexually, and information that he had not behaved in a

sexually inappropriate manner for quite some time. We were also aware that an adult driver would always be present on the bus.

She went on to state that the "decision was also based on student data confidentiality and privacy concerns. Additionally, the [ ] team concluded it was inappropriate for people outside of the team to know the reasoning for the accommodation."

This is precisely the type of discretionary policy decision that courts in this state have refrained from second-guessing. *Watson,* 553 N.W.2d at 412.

b. *Official Immunity.*

The alleged failure to follow the instruction "Sit in Front Seat Alone" is not protected by official immunity. In support of our conclusion is the Minnesota Supreme Court's decision in *Williamson* in which two state employees were charged with the task of demolishing a house. *Williamson,* 310 Minn. at 60, 245 N.W.2d at 243. While demolishing the house, they intruded upon an adjacent property and damaged a building located on that property. *Id.* The court held that the employees charged with demolishing the house were not protected by official immunity because their task was a ministerial one. *Id.* at 61, 245 N.W.2d at 244. It explained that

> [w]hile the discretionary-ministerial distinction is a nebulous and difficult one because almost any act involves some measure of freedom of choice as well as some measure of perfunctory execution, the acts of the defendants here are clearly ministerial. Their job was simple and definite—to remove a house. While they undoubtedly had to make certain decisions in doing that job, the nature, quality, and complexity of their

decision-making process does not entitle them to immunity from suit.

*Id.*

■ Here, there was significantly less discretion vested in the bus driver and bus aides than that possessed by the employees discussed in *Williamson.* "Sit in Front Seat Alone" is an absolute and certain instruction that leaves no room for discretion on the part of Bloomington's bus driver and bus aides. Simply put, when C.R. was on the bus, he was to sit alone, in the front seat. It cannot be reasonably argued in light of *Williamson* that the bus driver and bus aides were performing anything other than a ministerial task.

While Bloomington argues that we should focus on the decision of whether to disclose C.R.'s prior history of sexually inappropriate behavior, appellant's pleadings are sufficient to establish that she challenged the Bloomington bus driver and bus aides' non-compliance with the instructions as well as the decision that led to the underlying instruction. Although the decision not to disclose C.R.'s history is protected by statutory immunity, the failure to follow the ministerial task of ensuring that C.R. sat alone in the front seat is not protected by official immunity. *See Gleason v. Met. Council Transit Operations,* 582 N.W.2d 216, 220–21 (Minn.1998) (stating that a bus driver's failure to follow guidelines set by his employer was not protected by official immunity). As a consequence, appellant's respondeat superior claim based on the actions of the bus driver and aides against Bloomington survives. *See* Minn.Stat. § 466.02 (stating that, generally, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function"); *Schroeder v. St. Louis County,* 708 N.W.2d 497, 503 (Minn.

2006) ("[M]unicipalities are generally liable for the torts of their employees if the tort is committed within the scope of employment.").

2. *The district court did not err when it granted Hosterman's motion for summary judgment based upon statutory and official immunity.*

a. *Statutory Immunity.*

As discussed in section 1.a, the decision not to disclose C.R.'s prior history of inappropriate sexual behavior on his bus-transportation form is protected by statutory immunity. To the extent that Hosterman was involved in this decision, its actions are protected by statutory immunity.

b. *Official Immunity.*

■ As discussed in section 1.b, following the explicit and unambiguous seating instructions contained on C.R.'s bus-transportation form was a ministerial act, and a school district employee's failure to follow those instructions is not protected by official immunity. But it is undisputed that Hosterman, unlike Bloomington, did not own or operate the buses that transported C.R. and B.R.W. Likewise, it is undisputed that Hosterman did not employ the bus drivers or bus aides who were on the buses that transported C.R. and B.R.W. As a consequence, liability stemming from the failure to enforce the instructions on C.R.'s bus-transportation form does not flow to Hosterman because no Hosterman employees were responsible for carrying out the instructions on C.R.'s bus-transportation form.

3. *The district court did not err when it denied appellant's motion to add a claim for punitive damages to her complaint.*

Appellant contends that the district court abused its discretion when it denied

her motion to add a claim for punitive damages. We disagree. Ordinarily, a district court's "denial of a motion to amend does not finally foreclose the claim for punitive damages, since discovery may lead to evidence sufficient to justify a renewed motion." *McKenzie v. N. States Power Co.*, 440 N.W.2d 183, 185 (Minn. App.1989). Here, the district court's revised scheduling order, dated November 30, 2007, required that discovery be completed on or before February 7, 2008. The challenged order is dated March 7, 2008. Thus, the district court's denial of appellant's motion to amend her complaint to add punitive damages has the practical effect of finally foreclosing the claim for punitive damages because the end of discovery will prevent appellant from uncovering evidence sufficient to justify a renewed motion. As a result, we will address this issue on the merits.

 "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights. or safety of others." Minn.Stat. § 549.20, subd. 1(a) (2008). Punitive damages are an extraordinary remedy to be allowed with caution and within narrow limits. *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 892 (Minn.1986). If a party seeks punitive damages, then a district court must first determine whether the evidence is sufficient to submit the issue to the jury. *Nhep v. Roisen*, 446 N.W.2d 425, 427 (Minn.App.1989), *review denied* (Minn. Dec. 1, 1989). A district court may not allow an amendment for punitive damages when the motion to amend and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish that the defendant acted with willful indifference. *Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 154

(Minn.App.1990), *review denied* (Minn. Oct. 5, 1990). This court "may not reverse a district court's denial of a motion to add a claim for punitive damages absent an abuse of discretion." *L.M. ex rel. S.M. v. Karlson*, 646 N.W.2d 537, 545 (Minn.App. 2002), *review denied* (Minn. Aug. 20, 2002).

 Appellant requested that the district court allow him to amend his complaint to add a claim for punitive damages against Adam because (1) one of the bus aides was reprimanded twice for falling asleep on the bus instead of being terminated immediately; (2) the bus driver and bus aides failed to follow the instruction that C.R. sit alone in the front seat of the bus; and (3) one of the bus aides had impaired vision in one eye. The district court determined that these allegations did not establish a prima facie case that Adam acted with a deliberate disregard of the rights of B.R.W. *See* Minn.Stat. § 549.20, subd. 1(a). We agree. Appellant presented no evidence to the district court that Adam had any specific knowledge about C.R. that would create a high probability of injury to B.R.W. While the evidence presented by appellant may point towards negligence on Adam's part, it does not point to a "deliberate disregard" by Adam for the safety of B.R.W.

*4. The district court did not err when it denied Adam's motion for summary judgment on appellant's negligence claim against Adam.*

 Adam. contends that the district court erred when it denied Adam's motion for summary judgment on appellant's negligence claim based on foreseeability. We disagree. "An order denying a motion for summary judgment is not appealable unless the district court certifies the question presented as important and doubtful." *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn.1995)

(citing Minn. R. Civ.App. P. 103.03).[2] Here, the district court did not certify any of the questions presented in Adam's motion for summary judgment. But, because we conclude that it is in the interests of justice, we will address the district court's denial of Adam's motion for summary judgment. *See* Minn. R. Civ.App. P. 103.04 ("The appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require.").

■ We emphasize that the district court's decision on this point was based on its conclusion that the issue of foreseeability presented a disputed issue of material fact. When denying Adam's motion for summary judgment, the district court explained that it was

unpersuaded that [Adam] could not have foreseen the abuse because: (1) C.R. was approximately 13 years old at the time; (2) the bus driver was instructed that C.R. must sit alone in the front seat; and (3) C.R. had been diagnosed with [EBD]. Accordingly, the question of whether or not the harm was foreseeable is a disputed issue of material fact.

There are two additional factors relevant to the issue of foreseeability that were not specifically addressed by the district court in its opinion, but which were argued by appellant to the district court.[3] They provide additional grounds for denying summary judgment. First, there are the criteria for diagnosing a child with EBD found in Minn. R. 3525.1329 (2008). The criteri- on most relevant to the present case provides that

disordered thought processes manifested by unusual behavior patterns, atypical communication styles, or distorted interpersonal relationships, for example: reality distortion beyond normal developmental fantasy and play or talk; inappropriate laughter, crying, sounds, or language; self-mutilation, *developmentally inappropriate sexual acting out,* or developmentally inappropriate self-stimulation; rigid, ritualistic patterning; perseveration or obsession with specific objects; overly affectionate behavior towards unfamiliar persons; or hallucinating or delusions of grandeur [are characteristics of a child diagnosed with EBD].

Minn. R. 3525.1329, subp. 2a(A)(2) (emphasis added). In conjunction with this criterion, there is the uncontroverted deposition testimony of Adam's office manager stating that Adam dealt almost exclusively with special-needs students. When the above-mentioned criterion and deposition testimony are taken together, it could be argued that a bus service specializing in transporting special-needs students should have a greater awareness that the failure to follow specific seating instructions could result in inappropriate sexual contact.

Second, there is evidence in the record that the Adam's bus driver responsible for transporting C.R. and B.R.W. to and from Hosterman during the school year received a verbal instruction from an employee at C.R.'s group home that he should sit in the front of the bus.[4] There is also evidence

---

2. An exception to this general rule exists when the motion denied is based on governmental immunity from suit. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn. 1986). This exception is not applicable because the district court's decision to deny Adam's motion for summary judgment was not based on governmental immunity.

3. These factors are based upon undisputed facts contained in the record.

4. This instruction is particularly relevant because Adam denies receiving from Bloomington the bus-transportation form for C.R. that indicated he should sit alone in the front of the bus. Bloomington has not produced definitive evidence that this form was provided to Adam.

that, while the instruction was initially followed, it was disregarded after some amount of time, after which C.R. was allowed to sit in the back of the bus. This instruction is also pertinent to the issue of foreseeability because it could indicate that the instruction was given in order to protect other students on the bus.

## DECISION

In sum, we (1) affirm the district court's denial of appellant's motion to amend the complaint to add a claim for punitive damages against Adam; (2) affirm the district court's denial of Adam's motion for summary judgment; (3) affirm the district court's grant of summary judgment in favor of Hosterman; and (4) affirm the district court's holding that Bloomington's decision not to disclose C.R.'s prior history of sexually inappropriate behavior on his bus-transportation form is protected by statutory immunity. But because the alleged failure of Bloomington's bus driver and bus aides to follow the instruction contained on the bus-transportation form is a ministerial act and is not protected by official immunity, we reverse the district court's grant of summary judgment in favor of Bloomington on this issue, and remand for a trial on that claim as well as the claim against Adam.

**Affirmed in part, reversed in part, and remanded.**