*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1314
A14-2009**

Wallace Armstrong, et al.,
Appellants,

vs.

Hasbargen Logging, Inc., et al.,
Respondents,

State of Minnesota,
Respondent.

**Filed July 6, 2015
Affirmed
Ross, Judge**

Koochiching County District Court
File No. 36-CV-12-242

David M. Johnson, Thibodeau, Johnson & Feriancek, PLLP, Duluth, Minnesota (for appellants)

Teri E. Bentson, Travis J. Adams, Law Offices of Thomas P. Stilp, Golden Valley, Minnesota (for respondents Hasbargen Logging, Inc. and Derek Cook)

Lori Swanson, Attorney General, Jacob D. Campion, Assistant Attorney General, St. Paul, Minnesota (for respondent State of Minnesota)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Snowmobiler Wallace Armstrong crashed into a logging truck on a portion of a Koochiching County state trail that is shared with a logging road. Armstrong sued the state, the logging company, and the truck driver to recover damages for his serious injuries. The district court entered summary judgment on Armstrong's claims against the state based on vicarious official immunity, and a jury found Armstrong 100% responsible for the collision and awarded him nothing for his claims against the remaining defendants. Armstrong appeals the district court's decisions granting summary judgment to the state, denying his motion to amend the complaint to add punitive damages, and denying his motion for a new trial. Because the district court committed no reversible error, we affirm.

## FACTS

Wallace Armstrong broke away from his snowmobiling group on a February 2010 morning on a state trail in Koochiching County. Armstrong sped ahead eastward at about 35 miles per hour toward a "T intersection" (the intersection actually resembles a "y") where he would have to turn left, or north, as the snowmobile trail merged into a logging road. Meanwhile, Hasbargen Logging employee Derek Cook was driving a Hasbargen logging truck north of the intersection at about 15 miles per hour southbound on the shared portion of the road–trail, also headed for the intersection, intending to travel straight through it. Armstrong did not see Cook's logging truck, and Cook did not see Armstrong's snowmobile, until a collision was imminent.

The logging truck entered the intersection first. Cook had been slowing his truck down so he could stop just south of the intersection to access a ticket box related to his logging run. Cook entered the intersection and, as he did, he saw Armstrong's snowmobile through his passenger-side window approaching "very fast" from the west. Armstrong had the opportunity to see the truck up ahead of him as it entered the intersection from his left moving toward his right. Armstrong attempted to avoid hitting the truck. The truck's entire tractor and most of its trailer passed through the intersection before Armstrong reached the intersection. Armstrong veered his snowmobile sharply to the left as he entered the intersection, attempting to avoid a collision by clearing the tail of the trailer. But just as Armstrong turned left onto the shared part of the trail, his momentum carried him into the trailer's rear bumper.

So at the point of collision, the snowmobile had turned from east to north and was on the state trail several feet into the trail's merger with the logging road. Because the truck had passed mostly through the intersection before the collision, the tractor and most of its trailer had left the shared part of the road, and, except for the rear-most part of the trailer where the snowmobile struck, the truck and trailer were off the shared part and onto the logging road exclusively.

Armstrong suffered a severe head injury. He sued the state, along with Cook and Hasbargen, alleging that the state "negligently allowed the design and construction of the Hasbargen Logging trail and negligently approved [or] failed to monitor or correct the signage for the operation of logging trucks." The state moved for summary judgment. The district court granted the state's motion, reasoning that official immunity shielded the

3

state officials from damages resulting from their discretionary decisions about the road's design and signage and holding that the state was therefore vicariously immune.

Armstrong moved to amend his complaint to claim punitive damages against Cook and Hasbargen based on his general allegation that they acted "with deliberate disregard for the rights and safety of others." The district court denied the motion for lack of showing for the claim.

The district court held a jury trial. Koochiching County Sheriff Brian Jespersen testified that he investigated the accident and concluded that Armstrong was operating his snowmobile at an unsafe speed. He told the jury that he had investigated many snowmobile collisions. He described himself as an avid snowmobiler. And over Armstrong's objection, he explained why he concluded that Armstrong had been traveling too fast:

> Q: [W]hat did you see that gave you the impression
> [Armstrong] was going too fast?
> A: Well, as you come around the corner, and I remember
> there was signage there, and with the logging road being there
> he should have been slowing down and being cautious when
> you have signage there, which there was signage.

The jury found that the defendants were not responsible for causing the collision and that Armstrong was 100% responsible.

Armstrong moved for a new trial on the theory that Sheriff Jespersen's opinion testimony lacked foundation and that the district court had given an erroneous jury instruction about the right-of-way. The district court denied the motion.

Armstrong appeals.

4

# D E C I S I O N

## I

Armstrong asks us to reverse summary judgment in favor of the state. We review the district court's summary judgment decision de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). We consider whether a genuine issue of material fact exists and whether the district court properly applied the law. *STAR Ctrs, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002).

Armstrong argues that the state is liable for its decision to create the shared-use trail for loggers and snowmobiles. The district court held that official immunity shielded the state from damages liability for its decision to create the shared-use trail. Official immunity shields public officials from damages liability for their discretionary actions except when they act maliciously. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). This allows the officials to perform their duties without fearing personal liability. *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 678 (Minn. 1988). When the official herself is protected from damages by official immunity, of course her government-entity employer cannot become vicariously liable to pay those damages under the doctrine of respondeat superior; the entity is, instead, effectively vicariously immune from liability. *See Watson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996).

The manner in which the state decided to create the shared-use trail supports the district court's grant of summary judgment to the state. We must consider the nature of the official action and assess whether the action was discretionary (requiring the exercise of professional judgment) or ministerial (requiring only the execution of a fixed and

5

certain duty), because immunity shields the official only for her discretionary acts. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). Department of natural resources forester Clarissa Spicer was the state's primary decision maker. In 2008 Spicer assessed a timber stand in the Pine Island State Forest. She concluded that the timber was merchantable and could be removed. Spicer needed to determine the best way for loggers to access the timber. She decided "to use the old logging trail to get from Indian Pines Forest Road to the southeast corner of the site and then use the snowmobile trail to access the site from both the south and the east."

Spicer weighed various factors before arriving at this solution. She knew that no public road serviced the area but that there was an old logging trail and a recently established snowmobile trail. Spicer considered how significantly the shared use would impact the snowmobilers' recreational use; she considered how significantly creating a new route would impact the environment; she considered how significantly the loggers would impact the environment by using the trail for logging activity; and she considered the amount of resources necessary to reroute the snowmobile trail to avoid shared use. She had to determine the prudent course after weighing these concerns. And this informs us that her action resulted from her exercise of discretionary judgment; it was not a fixed and certain course.

Armstrong maintains that Spicer's decision to create the shared-use trail was not discretionary because she failed to follow the approval procedures outlined in a DNR circular letter. The argument lacks factual and legal support. The cited departmental letter declares that "trucks may not use the trail treadway to access adjacent operations unless

6

pre-approved by both the area [trails and waterway] supervisor and area forest supervisor." Although DNR area trails and waterway supervisor Wade Miller did not recall pre-approving the shared-use trail, Patricia Thielen, the area forest supervisor, testified that both she and Miller had in fact pre-approved the plan. And Armstrong cites no legal authority establishing that an official's failure to follow a departmental decision-approval process would, in any event, disqualify her from immunity for her discretionary decision.

Armstrong next argues that the state is not immune from suit for damages that result from his claim that the state should have posted warning signs at the intersection where the accident occurred. Spicer posted "Trucks Hauling" signs on the snowmobile trail at least 200 feet before the trail merged with the logging road, installing them where they would be most visible and highlighting them with ribbons. Armstrong's claim for damages based on the signage appears to have a causation problem. It is undisputed on appeal that Armstrong was in a position from which he could see the lumber-hauling truck entering the intersection (and that he then acted to avoid the collision) long before he reached the intersection where he says another sign should have been posted. It is therefore impossible that the absence of an additional sign closer to the intersection caused the collision. But we need not decide the case on this basis because Armstrong's argument clearly fails on legal grounds.

Spicer posted warning signs complying with the DNR policy of posting warning signs "approximately 200 feet on either side of any segment of a road or trail being actively used or crossed for extractive operations." The department's adoption of the

signage policy is a "[p]lanning level decision[] . . . involving questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy." *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn. 1988); *see also Steinke v. City of Andover*, 525 N.W.2d 173, 176 (Minn. 1994) ("[The county's] decision to place signs only along county roads and recognized right-of-ways involved more than merely a professional or scientific judgment; it involved the type of political, social and economic considerations that lie at the center of discretionary action."). Because challenging an official's compliance with official policy challenges the policy itself, and the policy is the fruit of discretionary decision-making, the official's decision to follow the policy is also immune from liability for damages. *See Nusbaum v. Blue Earth Cnty.*, 422 N.W.2d 713, 723 (Minn. 1988). The district court therefore also correctly entered summary judgment dismissing Armstrong's claim based on Spicer's compliance with DNR policy.

Spicer is immune from liability for damages for her decisions and actions in creating and marking the shared trail. The state is vicariously immune. We therefore affirm the district court's grant of summary judgment to the state.

## II

We also are not led to reverse by Armstrong's argument that the district court erroneously denied his motion to amend the complaint to claim punitive damages against Hasbargen and Cook. Armstrong based his motion on his allegation that Hasbargen and Cook "acted with deliberate disregard for the rights and safety of others, including plaintiff Wallace Armstrong." A decision to permit amendments to a complaint falls

8

within the discretion of the district court. *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003).

A plaintiff can claim punitive damages "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a) (2014). Because punitive damages are an extraordinary remedy, courts must consider them cautiously and narrowly. *J.W. ex rel B.R.W. v. 287 Intermediate Dist.*, 761 N.W.2d 896, 904 (Minn. App. 2009) (citing *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 892 (Minn. 1986)). A plaintiff cannot obtain punitive damages unless the defendant either knew of or intentionally disregarded facts "that create a high probability of injury to the rights or safety of others" and deliberately proceeded to act either consciously or intentionally disregarding the probability of injury, or with indifference to the likelihood of injury. Minn. Stat. § 549.20, subd. 1(b) (2014). A district court should not allow an amendment claiming punitive damages "where the motion and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish the defendant acted with [deliberate disregard]." *Swanlund v. Shimano Indus. Corp., Ltd.*, 459 N.W.2d 151, 154 (Minn. App. 1990) (quotation omitted), *review denied* (Minn. Oct. 5, 1990).

Armstrong does not present a *prima facie* case that Hasbargen or Cook showed a deliberate disregard for the rights or safety of others. Kit Hasbargen, owner of Hasbargen Logging, Inc., testified that he instructs his drivers that a loaded truck has the right-of-way for safety reasons because it is bigger and cannot react as effectively as smaller, unloaded vehicles. Cook testified that he believed he had the right-of-way at the

9

intersection because he was going straight while the snowmobile was turning, and "[n]ormally the traffic going straight has the right-of-way." Neither Kit Hasbargen's right-of-way instructions nor Cook's right-of-way understanding constitutes a deliberate disregard for safety, even if, as Armstrong asserts, they are mistaken as a matter of law. And based on the undisputed facts, Cook's failure to yield before entering the intersection was not the cause of the collision; he slowed his truck before reaching the intersection, and he did not see the snowmobile (and Armstrong apparently did not see him) until after Cook entered the intersection. The argument also fails for a related independent reason; the jury found that Armstrong's negligence constituted 100% of the collision's cause. The district court acted well within its discretion by denying Armstrong's punitive-damages motion.

### III

Armstrong unsuccessfully moved for a new trial based on his contention that the district court allowed Sheriff Jespersen to testify without proper foundation that he thought Armstrong was operating his snowmobile too fast. We review a district court's new trial decision for an abuse of discretion. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 892 (Minn. 2010). Foundational rulings on evidentiary challenges also fall within the district court's discretion. *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012). The district court need not grant a new trial based on an improper evidentiary ruling if the complaining party cannot show prejudice. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn. 1997). We will not reverse if it is unlikely that erroneously admitted evidence might have influenced the jury and caused the verdict.

10

*W.G.O. ex rel. Guardian of A.W.O. v. Crandall*, 640 N.W.2d 344, 349 (Minn. 2002). We can assume without deciding that Sheriff Jespersen's opinion about Armstrong's speed lacked proper foundation because any error in admitting the sheriff's opinion resulted in no prejudice to Armstrong and was therefore harmless.

The record informs us that, even without the sheriff's testimony, the jury received ample evidence from which it would infer that Armstrong was moving too fast or was inattentive. For example, DNR area supervisor Thielen testified that she investigated the accident and that a snowmobile operator would have easily been able to see a truck in the intersection. This led her to speculate that either Armstrong "was not looking ahead or [he] was going at a very, very high rate of speed." Armstrong did not object to Thielen's testimony. Truck driver Cook testified that as he went slowly through the intersection, he saw Armstrong approaching through his side window and "[w]hen [Armstrong] was coming around the corner he looked to be going very fast." Armstrong did not object to Cook's testimony.

In addition to Thielen's and Cook's testimony, a reasonable jury would likely conclude from the circumstances that Armstrong was moving too fast. The jury knew that Armstrong had left his group of snowmobilers behind. As counsel acknowledged at oral argument, Armstrong had up to a quarter-mile view of the intersection where the accident occurred, and he would have been able to see the truck ahead of him when it entered the intersection. One witness testified that "a straight stretch of trail . . . approaching the intersection" extended for 800 to 1,000 feet. The jury also knew that Armstrong collided with the rear bumper of the truck, which means that the front of the truck and much of the

trailer had already moved through the intersection at the time of the collision. Given the period of time that necessarily passed from the moment the front of the slow-moving tractor came into Armstrong's line of sight until the point of collision after both the tractor and trailer had passed almost entirely through the intersection, a reasonable jury could infer from Armstrong's inability to stop short of crashing that he was traveling too fast. The only alternative reasonable inference is that, as Thielen suggested, Armstrong was not watching where he was going. Either possibility—speeding or inattentiveness—indicates Armstrong's negligence.

The jury received abundant evidence apart from Sheriff Jespersen's testimony that Armstrong was travelling "too fast" or was otherwise negligent before the collision. It is therefore not likely that the sheriff's statement led to the jury's verdict.

**IV**

Armstrong also moved for a new trial claiming that the district court erroneously instructed the jury. The parties stipulated that, as a matter of law, "[a]ny trail user who is about to enter onto or cross a trail treadway, shall yield the right-of-way to any trail user already on the treadway to be entered or crossed." *See* Minn. R. 6100.3400, subp. 6(D) (2013). Armstrong requested a jury instruction that declared that rule of law and also that "[t]he court has determined that Defendant Cook was crossing the trail treadway within the meaning of [that rule]." The district court denied Armstrong's request and left the jury to decide for itself the facts bearing on which driver had the right-of-way.

A district court has broad discretion to instruct the jury, and only an abuse of that discretion leads us to reverse. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn.

12

2002). We see no abuse of discretion here. The disputed part of rule 6100.3400 has no bearing on this case. The rule announces a right-of-way when a "trail user . . . is about to enter onto or cross a trail treadway." It does not suggest which party has the right-of-way where, as here, neither party was "about to enter onto or cross a trail treadway." Here, Armstrong was not entering or crossing the trail. He intended to remain on the trail, and he did remain on it, even as he turned from the part of the trail that is not shared with the logging road onto the part that is shared. Cook also was not entering the trail treadway or crossing it. He was moving through the intersection from the shared portion onto the unshared portion, *leaving* the trail and entering the logging road exclusively.

Armstrong argues that the rule applies and the instruction was useful because "Cook was crossing Armstrong's lane of travel on the . . . snowmobile trail in order to leave the trail and continue south." The argument confirms our understanding of the undisputed evidence, which is that Cook was leaving the trail, not entering it or crossing it. Armstrong has failed to explain how Cook's alleged "crossing [of] Armstrong's lane of travel" implicates the rule.

We also see no error in the instructions that were read to the jury, even if part of the stipulated instruction from rule 6100.3400, subpart 6(D), included an irrelevant rule of law. Armstrong's appellate counsel conceded at oral argument that the instructions read were correct statements of law. The district court read multiple instructions about the right-of-way, including one that advises when the right-of-way should be yielded and when a person forfeits it by speeding. These instructions were fitting because the parties disputed who had the original right-of-way and whether, if Armstrong had it, he forfeited

13

it by speeding. Because Armstrong's requested instruction was not relevant and the instructions given were accurate statements of law, we affirm the district court's decision to deny Armstrong's instruction-based motion for a new trial.

**Affirmed.**