*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1598
A14-2072**


Jacob Brown, a minor, by his legal guardian Megan Brown, et al.,
Appellants,

vs.

Duluth Steam Cooperative Association,
Respondent.


**Filed August 3, 2015
Affirmed
Halbrooks, Judge**


St. Louis County District Court
File No. 69DU-CV-13-302

Donald Chance Mark, Jr., Tyler P. Brimmer, Andrew T. James, Fafinski Mark & Johnson, P.A., Eden Prairie, Minnesota (for appellants)

Steven L. Reyelts, Julie R. Benfield, Reyelts Law Office, P.A., Duluth, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Following a jury verdict awarding compensatory but not punitive damages in this personal-injury action, the district court determined that appellants were the prevailing party but denied certain items of their requested costs and disbursements on the ground that they were not reasonable. Appellants now argue that the district court erred by (1) denying their pretrial motion to amend the complaint and add a claim for punitive damages, (2) denying their request for a continuance during closing arguments in the punitive-damages phase, and (3) denying portions of their requested costs and disbursements. We affirm.

## FACTS

On August 26, 2011, the Brown family was in Duluth for a wedding. Mid-afternoon, as appellants Megan Brown and Troy Brown organized their children for a photo in front of the aerial lift bridge, two-year-old appellant Jacob Brown fell on a manhole cover on the sidewalk and suffered a second-degree burn on his lower right leg. St. Luke's Hospital providers treated Jacob's injuries and notified respondent Duluth Steam Cooperative Association, which operates and maintains the steam distribution system running beneath the manhole cover. A Duluth Steam employee inspected the area at 3:30 p.m., found no indication of steam leaks or other hazards, but barricaded the manhole cover (and two others nearby) as a precautionary measure.

Appellants Megan Brown, Troy Brown, and Jacob Brown commenced this personal-injury action against Duluth Steam and its members seeking damages for

2

negligence.[1]  After the close of discovery in October 2013, the Browns moved to amend their complaint to add a claim for punitive damages.  The district court denied the motion, ruling that there was insufficient evidence that "the temperature of the manhole cover in question was above industry standards and presented a safety risk, and that [Duluth Steam] knew about the substantial risk and deliberately disregarded such risk." The district court specifically found:

> 15. [Duluth Steam] was not aware of any safety issues with the manhole in question or with any other manhole on South Lake Avenue.  [Duluth Steam] did not observe any steam leak and had no other complaints regarding that manhole prior to Jacob Brown's injury.  [Duluth Steam] did not believe there was a need to perform routine inspections of the manholes and their covers to check for excessive temperatures and other safety hazards.
>
> 16. After Jacob Brown's incident, [Duluth Steam] installed a three inch gate valve blanke[t] over the exposed valve, draped an insulation blanket over the piping in the manhole, and painted the manhole cover.  It is unclear whether the manhole cover paint was available to [Duluth Steam] when the incident occurred.  [Duluth Steam] also started checking temperatures of the manhole covers more frequently after this incident occurred.

Before trial, Duluth Steam made a total-obligation rule 68 offer of judgment in the amount of $15,000 that the Browns rejected.  The case was tried to a jury.

After the Browns presented their case in chief, they renewed their motion to amend the pleadings to add a claim for punitive damages.  The Browns argued that "now that the record has been fully before the Court . . . [and] the witnesses have had a chance

---

[1]  Appellants also initially sued Duluth Steam's members and sought equitable relief. The parties later stipulated to dismissal of all claims against the members and to dismissal of the equitable-relief claim against Duluth Steam.

3

to be heard . . . the motion deserves reconsideration." The Browns also noted that, if their motion was granted, a bifurcated trial was not necessary, but if the district court elected to bifurcate, "for the sake of planning purposes, [counsel's plan would be] to provide sufficient information on the very short basis in which to argue what the value of the punitive damage case would be," and this would not "necessarily require another day or more testimony."

The district court ruled that the Browns had made a prima facie case for punitive damages, specifically noting with respect to findings 15 and 16 in the pretrial order that "there's evidence that has been presented at this trial that is different from what those findings were," and permitted the amendment. The district court bifurcated the trial into compensatory and punitive phases.

In the compensatory phase, the jury found Duluth Steam negligent and awarded "medical costs and compensatory damages for past pain, disability, and emotional distress" in the amount of $11,354.40. The trial then adjourned for the day. Late in the evening, the Browns' counsel emailed a subpoena duces tecum to Duluth Steam's counsel, purporting to require a witness to appear at 9:30 a.m. the next day as well as the production of all documents evidencing Duluth Steam's financial condition, revenues, profitability, and the costs of remedial measures taken.

Counsel met in chambers the next morning, discussed the subpoena, and made a plan for the punitive-damages phase. On the record in the courtroom, the district court instructed the jury on punitive damages. Duluth Steam's counsel then delivered his closing argument, followed by the Browns' counsel. During his argument, the Browns'

4

counsel attempted to present—in the form of a document printed from the Internet—"some information that we can provide through the public domain to at least give you some guidance" with respect to profit made by the defendant. Duluth Steam objected because the document was not in evidence, and the district court sustained the objection.

The district court excused the jury briefly, and the Browns' counsel acknowledged that the document that he wanted to present was not part of discovery or the record; but he referenced the earlier chambers discussion and asserted that because the data was known to Duluth Steam, he could present it in lieu of evidence that would have been produced in response to his subpoena. He also asserted that the district court could take judicial notice of the contract-amount data gleaned from the Internet.

The district court responded:

> [M]y recollection of the discussion in chambers . . . differ[s] from yours a little bit in that my impression was that you indicated to [opposing counsel] before we even got into discussions that you didn't need the [subpoenaed evidence], that you were prepared to proceed without that information. . . . You made no mention of the fact that you were about to submit something to the jury that had not been provided . . . prior to that time. This seems a bit like you're coming through the back door without telling anybody you're arriving.

The Browns' counsel then asked for a continuance, which the district court denied. The district court noted that the amount of Duluth Steam's contract with the city was not evidence of profitability and that counsel was attempting to offer it without any opportunity for cross-examination or rebuttal. The district court stated, "I gave you an opportunity this morning to tell me that you wanted to present additional evidence. You

told me that you did not wish to do so and that you were ready to move to closing arguments, and this feels a bit like trial by ambush."

After the punitive-damages case went to the jury, the Browns' counsel made an offer of proof, submitting as court exhibits the contract-amount document and the subpoena, which he acknowledged had not been formally served. The district court again reminded counsel that the Browns' counsel had indicated in chambers that "they would proceed directly to closing argument, that there was no intention of offering any additional evidence prior to doing so." After more than six hours of deliberation, the jury declined to award punitive damages to the Browns.

The parties were next before the district court on the Browns' application for costs and disbursements, which the district court granted in part after determining that the Browns were the "prevailing party." The Browns now appeal.

## DECISION

### I.

The Browns argue that the district court erred by denying their pretrial motion for leave to amend the complaint to add a claim for punitive damages. The parties dispute whether the proper standard of review is de novo or abuse of discretion. The Browns argue that a de novo standard applies, citing our decision in *Swanlund v. Shimano Indus. Corp., Ltd.*, 459 N.W.2d 151, 155 (Minn. App. 1990), *review denied* (Minn. Oct. 5, 1990). We noted in *Swanlund* that "the proper standard in a pretrial appeal is that for a directed verdict" but acknowledged that the standard on appeal after trial "may differ,

6

depending on what fact determinations have been made." *Id*. Duluth Steam correctly points out that *Swanlund*, unlike this case, involved a pretrial appeal.

In more recent cases, which presented as posttrial appeals, we have reviewed the denial of a motion to add a claim for punitive damages for abuse of discretion. *See J.W. ex rel. B.R.W. v. 287 Intermediate Dist*., 761 N.W.2d 896, 904 (Minn. App. 2009) ("This court may not reverse a district court's denial of a motion to add a claim for punitive damages absent an abuse of discretion." (quotation omitted)); *Bjerke v. Johnson*, 727 N.W.2d 183, 196 (Minn. App. 2007), *aff'd*, 742 N.W.2d 660 (Minn. 2007). We discern no reason to apply a different standard here.

Under Minn. Stat. § 549.191 (2014), a party to a civil action may move to amend the complaint to add a claim for punitive damages. Punitive damages are an extraordinary remedy "to be allowed with caution and within narrow limits." *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 892 (Minn. 1986). In support of a punitive-damages motion, the moving party must offer prima facie evidence that clearly and convincingly shows the defendant's "deliberate disregard for the rights or safety of others." Minn. Stat. §§ 549.191, .20, subd. 1(a) (2014); *Bjerke*, 727 N.W.2d at 196. "Deliberate disregard" means the defendant "has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others" *and* "deliberately proceeds to act" either "in conscious or intentional disregard of the high degree of probability of injury" or "with indifference to the high probability of injury." Minn. Stat. § 549.20, subd. 1(b) (2014).

7

If the district court finds prima facie evidence in support of the motion, it "shall" grant the amendment. Minn. Stat. § 549.191. A prima facie case is established when evidence is presented, which if unrebutted, sustains a fact or supports a judgment. *McKenzie v. N. States Power Co.*, 440 N.W.2d 183, 184 (Minn. App. 1989). "'[P]rima facie' does not refer to a quantum of evidence, but to a procedure for screening out unmeritorious claims for punitive damages." *Swanlund*, 459 N.W.2d at 154. "Clear and convincing evidence" refers to a quantum of evidence that is "more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978). When a motion and its supporting evidence do not reasonably allow the conclusion that clear and convincing evidence will establish that the defendant acted with deliberate disregard for the safety of others, denial of the motion is proper. *McKenzie*, 440 N.W.2d at 184.

The Browns argue that they made a prima facie showing in support of their pretrial motion, and therefore the district court should have granted it. But the district court determined that, "While this Court finds that [Duluth Steam]'s actions or inactions may have a basis in a negligence claim, the facts presented in this case do not provide sufficient evidence that would permit a jury to conclude [Duluth Steam] deliberately disregarded the rights or safety of others." Having reviewed the evidence relied on by the Browns in support of their pretrial motion, we conclude that the district court properly found that the punitive-damages standard was not satisfied.

The Browns also argue that the district court's later ruling permitting their punitive-damages claim compels the conclusion that the district court erred by denying

their pretrial motion. Generally, a ruling denying a motion to amend after the close of discovery forecloses a claim for punitive damages. *J.W. ex rel. B.R.W.*, 761 N.W.2d at 904. But because of the nuances of witness testimony, a prima facie case for punitive damages could be established at trial even if a pretrial motion failed to meet the standard.

Here, the district court found that evidence presented at trial differed from findings 15 and 16 in the pretrial order. Because the district court found that some of the evidence presented at trial was new and supported a prima facie case for punitive damages, it properly granted the renewed motion. Under these circumstances, granting the renewed motion does not require the conclusion that the district court abused its discretion by denying the pretrial motion. We are satisfied here that the district court properly exercised its discretion by denying the pretrial motion.

## II.

The Browns argue that the district court abused its discretion by denying their request for a continuance in the punitive-damages phase so that they could pursue additional discovery. The Browns acknowledge that they did not request a continuance until midway through their closing argument but nevertheless argue that their request was "timely."

The only legal authority relied on by the Browns in support of this argument is *Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982). In *Rice*, plaintiffs filed suit in early January, and defendants answered in mid-to-late January, simultaneously filing motions for summary judgment. 320 N.W.2d at 409. In late January, the district court denied plaintiffs' motion to continue the summary-judgment hearing scheduled for February 1 to

allow time for discovery. *Id.* The Minnesota Supreme Court concluded that the district court erred by denying "adequate discovery prior to that hearing." *Id*. at 413. Because of the compressed timeline overall and counsel's pre-hearing efforts to obtain a continuance, *Rice* does not resolve our inquiry.

Here, the parties had agreed earlier in the day to proceed without additional evidence specific to punitive damages, and the request for a continuance was made for the first time during closing argument. On these facts, we conclude that the district court acted well within its discretion by denying the request for a continuance.

**III.**

The Browns argue that the district court abused its discretion by denying some of their requested costs and disbursements. The parties agree that the Browns prevailed at trial for purposes of this analysis because the jury awarded them compensatory damages that, together with the costs and disbursements allowed by the district court, exceed the $15,000 total-obligations rule 68 offer made by Duluth Steam.

"In every action in a district court, the prevailing party . . . shall be allowed reasonable disbursements paid or incurred . . . ." Minn. Stat. § 549.04, subd. 1 (2014). "The standard by which the court's discretion is measured is whether expenditures are *reasonable*. Therefore, absent a specific finding that the costs were unreasonable, the court *shall* approve recovery of disbursements." *Jonsson v. Ames Constr., Inc.*, 409 N.W.2d 560, 563 (Minn. App. 1987), *review denied* (Minn. Sept. 30, 1987).

Here, after a hearing, the district court granted some of the Browns' reimbursement requests in full. But because the district court found that some of the

claimed costs and disbursements were unreasonable, it reduced or denied certain items. Of the $18,455.84 claimed by the Browns, the district court granted $8,911.10. "A determination of what costs are reasonable is largely left to the discretion of the [district] court." *Casey v. State Farm Mut. Auto. Ins. Co.*, 464 N.W.2d 736, 740 (Minn. App. 1991), *review denied* (Minn. Apr. 5, 1991).

**Out-of-Town Costs**

The Browns, who live in Georgia, retained an Eden Prairie law firm and a Northfield-based liability expert to pursue this action in St. Louis County. The district court granted reduced costs for the expert's travel and denied counsel's travel-related costs and fax filing fees in their entirety. The district court determined that Duluth Steam should not be required to pay additional expenses simply because the Browns elected to hire out-of-town professionals, although it did grant their expert's trial-specific travel costs. The Browns argue that there were good reasons for their hiring decisions but cite no legal authority supporting their argument that increased costs are therefore reasonable. We conclude that the district court did not abuse its discretion by determining that certain travel-related costs and fax filing fees were unreasonable.

**Testifying Expert**

The district court reduced the testifying expert's fees from approximately $7,300 to about $3,400, finding that the fees charged were "not proportional to the value of the case or the complexity of the case." The Browns argue that the value of the case is not a basis for assessing the reasonableness of expert expenses. But the Browns implicitly acknowledge that the *complexity* of the case is a reasonable basis for evaluating expert

11

expenses. The district court here acted within its discretion by reducing the expert's fees in this "straightforward personal injury case."

**Consulting Expert Fees**

The Browns argue that fees paid to their consulting expert for work completed before the action commenced were reasonably incurred because the expert aided in their case evaluation and preparation. But the expert was never examined before the court nor disclosed as an expert to Duluth Steam. Therefore, we are not persuaded that the district court abused its discretion by ruling that these fees were unreasonable.

**Mediation Fees**

The Browns argue that because the mediation was ordered by the court, denying them an award of the fees incurred by mediation is an abuse of discretion. We disagree. The district court here did not abuse its discretion by requiring the parties to share equally in the costs of mediation. *See Benson v. Nw. Airlines, Inc*., 561 N.W.2d 530, 541 (Minn. App. 1997) (noting that Minn. R. Gen. Pract. 114.11(b) presumes that the parties will split the costs of alternative dispute resolution equally).

**Trial Exhibit Costs**

The district court allowed costs associated with exhibits used at trial. It denied printing costs associated with trial preparation. We conclude that the district court acted within its discretion in making this distinction and denying costs for trial-preparation materials.

**Online Legal Research Fees**

The Browns argue that online research fees are recoverable under section 549.04. The district court found that $2,408 in online research fees was unreasonable in "this straightforward personal injury case" and also determined that legal research is a component of attorney fees and is not independently taxable. The district court's reasoning is sound, and we are not aware of any precedential Minnesota authority that provides guidance on this question. We therefore conclude that the district court did not abuse its discretion by denying the Browns' request for reimbursement of expenses incurred through online legal research.

**Affirmed.**